374 So.2d 1100 (1979)
MANACARE CORPORATION, d/b/A BLAKE MEMORIAL HOSPITAL, Appellant,
v.
First STATE INSURANCE COMPANY, INternational sURPLUS lINES iNSURANCE cOMPANY, AND Annie Lee James, As Personal Representative of the Estate of Precilla Ann James, Appellees.
No. 79-115.
District Court of Appeal of Florida, Second District.
August 31, 1979.
Charles S. Carrere of Harrison, Greene, Mann, Rowe, Stanton & Mastry, St. Petersburg, for appellant.
William D. Wood, III, St. Petersburg, for appellees First State Ins. Co. and Intern. Surplus Lines Ins. Co.
GRIMES, Chief Judge.
Appellant hospital challenges an order dismissing with prejudice its second amended third party complaint against appellee insurance carriers.
The litigation began on May 19, 1977, when Annie Lee James sued the hospital for malpractice which allegedly occurred on November 1, 1975, in connection with the death of Precilla Ann James. The hospital carried excess hospital professional liability insurance with both insurance carriers covering a policy period from April 4, 1975, to April 4, 1976. The policies were identical, and each was designed to insure half of the exposure. The policies noted in three different locations that they were written on a "claims made basis," presumably referring to the insuring provision which read in part,
Provided Always That
(a) such malpractice results in a claim being made against the Insured during the period of insurance as stated in the Declarations and of which immediate notice has been given in accordance with Sub-Paragraph 2 of the Special Condition hereof except that any claim subsequently arising out of the conduct or circumstances referred to in such notice shall for the purposes of this insurance be deemed to have been made during the currency of this insurance,
The second amended third party complaint contained three counts, each of which was predicated upon a different theory. Count I, which alleged that the insurance carriers had wrongly refused to assist and participate in the defense of the suit against the hospital, was without merit. The hospital's policies were unlike the ordinary liability policy in which the insurance company is obligated to defend the insured against law suits arising out of accidents covered by the policy. The specific language of these policies provided that the insured bear all costs and expenses in defending against claims except where the carriers voluntarily assumed the defense or unless the ultimate liability exceeded the amount of the self-insured retention, in which event the costs of the defense were to be pro rated. Even if there was coverage under the policy, at this stage of the proceedings, when no liability had been determined, the hospital's assertions against the carriers were premature.
*1102 The second count purported to seek a declaratory judgment on the issue of coverage. This count alleged that the incident referred to in the plaintiff's amended complaint occurred on November 1, 1975, which was within the policy period, and went on to conclude that the suit alleged matters within the coverage of the policy. Because of the conspicuous absence of any allegation that the plaintiff's claim against the hospital occurred within the policy period, this count, by itself, also failed to state a cause of action.
In count III the hospital contended that estoppel and waiver barred the insurance carriers from attempting to deny coverage. Attached to this count were copies of various letters from insurance agents, the general tenor of which was to suggest that the insurance carriers were dilatory in denying coverage. Significant to our consideration was a copy of a letter dated May 14, 1976, from Pratt Insurance Agency in Bradenton to the London Agency in Atlanta, enclosing "papers pertaining to a possible malpractice claim for L.W. Blake Memorial Hospital." The letter went on to say, "Please note that the claim occurred on 11/1/75 and that we were notified of said claim on 2/23/76, expiring insurance 4/4/76."
Standing alone, the third count did not state a cause of action in spite of the allegations supporting the theories of waiver and estoppel because coverage cannot be extended through waiver and estoppel. As the court noted in Six L's Packing Co. v. Florida Farm Bureau Mutual Insurance Co., 268 So.2d 560 (Fla.4th DCA 1972), cert. discharged, 276 So.2d 37 (Fla. 1973):
The general rule is well established that the doctrine of waiver and estoppel based upon the conduct or action of the insurer (or his agent) is not applicable to matters of coverage as distinguished from grounds for forfeiture. ... In other words, while an insurer may be estopped by its conduct from seeking a forfeiture of a policy, the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel.
Up to this point a superficial analysis would indicate that the second amended third party complaint simply stated no cause of action. However, count III realleged by reference the allegations of count II, and when these two counts are read together it appears that there are sufficient allegations to state a cause of action. A careful reading of the "claims made" paragraph quoted above indicates that coverage within the policy period depends upon when a claim is made against the hospital. The word "claim" is not defined in the policy. Surely a claim could predate a lawsuit, so the facts would need to be developed to see whether a claim was made against the hospital within the policy period. Even though count II fails to allege that a claim was made within the policy period, the letter from the Pratt Agency to the London Agency attached to count III recites that Pratt was notified of the claim on February 23, 1976, which was within the policy period. If Pratt was notified of the claim within the policy period, it seems to follow that the claim was made against the hospital prior to February 23, 1976. It makes no difference that the complaint does not allege whether Pratt was an agent for the hospital or for the insurance carriers, because the applicable policy provision requires only that a claim be made against the insured within the policy period.
The quoted policy provision also requires that the insured give immediate notice of the claim to the carriers. It could be argued that the requirement of giving notice to the carriers is a further ingredient of coverage, but policy language in support of this view is at least ambiguous. Therefore, following the well-established principle of construing policy ambiguities against the insurance company, we read the claims made paragraph to mean only that a claim must have been made against the insured within the policy period in order for coverage to exist. The failure to give the requisite notice to the carriers could, or course, result in the forfeiture of coverage, and should such a failure be raised as a defense in this case, the issues of waiver and estoppel *1103 might then become important. Tiedtke v. Fidelity & Casualty Company of New York, 222 So.2d 206 (Fla. 1969).
We can readily understand how the court concluded that the second amended complaint, as drafted, did not state a cause of action. Nevertheless, there are sufficient facts alleged therein to state a cause of action for coverage, and the fact that the complaint also contains surplusage and irrelevant legal theories did not warrant the granting of the motion to dismiss. Lytell v. McGahey Chrysler-Plymouth, Inc., 180 So.2d 354 (Fla.3d DCA 1965); Beck v. Barnett National Bank of Jacksonville, 117 So.2d 45 (Fla.1st DCA 1960).
REVERSED.
HOBSON and BOARDMAN, JJ., concur.