EDWARD K. ZUCKERMAN, ESQ., PLAINTIFF-APPELLANT, v.
NATIONAL UNION FIRE INSURANCE COMPANY,
DEFENDANT-RESPONDENT.

Argued March 5, 1985—Decided July 25, 1985.

*Anthony B. Vignuolo* argued the cause for appellant (*Borrus, Goldin & Foley,* attorneys).

*Walter E. Monaghan* argued the cause for respondent (*Haggerty & Donohue*, attorneys; *J. David Woods*, on the brief).

The opinion of the Court was delivered by

STEIN, J.

In this case, as in *Sparks v. St. Paul Insurance Co.*, 100 *N.J.* 325 (1985), which we also decide today, we are called upon to consider the enforceability of professional liability insurance written in the form of the "claims made" or "discovery" policy. Specifically, the issue is whether the policy provision limiting coverage to claims filed with the insurance company during the policy period is to be strictly enforced so as to bar coverage for those claims reported to the company subsequent to the expiration date of the policy.

I

The material facts in this case are not disputed. Appellant, Zuckerman, an attorney at law, was sued for malpractice in November, 1981, by former client Barbara Katz. Katz alleged that she retained appellant in April, 1978, after her hearing had been impaired by a loud, piercing noise emanating from the newly-installed telephone system at her employer's office. Although appellant's law firm filed a workers' compensation claim for Katz that was reduced to judgment, appellant failed to file a negligence complaint against the company that had installed the telephone. In September, 1980, appellant informed his client that the applicable statute of limitations had expired and suggested that Katz consult other counsel. Katz subsequently filed suit against appellant for malpractice.

An unbroken series of insurance policies issued by respondent, National Union Fire Insurance Company (National Union), provided appellant with professional liability coverage from January 15, 1974 through February 25, 1982. Each policy was a "claims made" policy, providing retroactive coverage for errors and omissions that occurred at any time prior to the

effective date of the policy but limiting such coverage to claims made against the insured and actually communicated to the company during the policy period.

When appellant was served with the Katz complaint in 1981, he did not notify respondent because he believed that the claim was "minimal" and could be settled within the deductible limits of his insurance policy. After a default judgment was entered against appellant in the Katz suit, he retained independent counsel to defend him. In June, 1982, the trial court granted a motion to set aside the default judgment and appellant was permitted to file an answer as well as a third-party complaint against the telephone installation company.

On December 28, 1982, appellant through his counsel notified respondent insurance company of the pendency of the Katz suit and requested that respondent defend the action and indemnify him in the event of liability. By letter of January 14, 1983, respondent denied coverage since appellant had been served with the summons and complaint three months before his policy expired but did not give notice of the claim until ten months after the policy expiration date. Respondent's disclaimer of coverage was based upon several policy provisions that limited the insurer's liability to only those claims that were reported to the company during the policy period. The pertinent provisions follow:

INSURING AGREEMENT

I. Coverage

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as money damages because of any claim or claims first made against the insured and reported to the company during the policy period, arising out of an act or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer * * * and caused by the insured or any other person for whose acts or omissions the insured is legally responsible, except as excluded or limited by the terms, conditions and exclusions of this policy.

       \*       \*       \*       \*       \*       \*       \*       \*

V.   Policy Period and Territory

  *  *  *  *  *  *  *  *

A claim is first made during the policy period or extended reporting period if: (a) during the policy or extended reporting period the insured shall have knowledge or become aware of any act or omission which could reasonably be expected to give rise to a claim under this policy and shall during the policy period or extended reporting period give written notice thereof to the Company in accordance with Condition VII.

  *  *  *  *  *  *  *  *

CONDITIONS

I.   Definitions

  *  *  *  *  *  *  *  *

(c) "Policy period" means the period of time between the inception date shown in the Declarations and the effective date of termination, expiration or cancellation of coverage and specifically excludes any extended reporting period hereunder.[1]

  *  *  *  *  *  *  *  *

VII.   Notice of Claim or Suit

Upon the insured becoming aware of any act or omission which could reasonably be expected to be the basis of a claim or suit covered hereby, written notice shall be given by or on behalf of the insured to the Company or any of its authorized agents as soon as practicable, together with the fullest information obtainable. If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

If during the policy period or the extended reporting period, the Company shall be given written notice of any act or omission which could reasonably be expected to give rise to a claim or suit against the insured under this policy, any claim which subsequently arises out of such act or omission shall be considered to be a claim reported during the policy year or extended reporting period in which the written notice was received.

According to its terms, appellant's policy afforded him coverage for acts or omissions occurring at any time, provided that the claim be asserted and reported to the carrier during the policy period. Exclusion (h) of the policy barred from retroactive coverage instances of malpractice involving claims "arising

---

[1]It is undisputed that the policy period with respect to the final policy issued by respondent commenced February 25, 1981 and terminated February 25, 1982.

out of any acts or omissions occurring prior to the effective
date of this policy if the insured at the effective date knew or
could have reasonably foreseen that such acts or omissions
might be expected to be the basis of a claim or a suit." The
policy also entitled the insured to purchase an "extended report-
ing endorsement" for an additional premium equal to 225% of
the insured's last annual policy premium. Exercise of this
option would have provided expanded insurance coverage by
extending indefinitely the period within which claims may be
reported to the company for acts or omissions that occurred
prior to the termination date of the policy. In February, 1982,
appellant's insurance agent allegedly sent final notice of the
expiration of the policy and at the same time offered appellant
an extended reporting endorsement, which he chose not to
purchase.

In January, 1983, Zuckerman instituted suit against National
Union, seeking a judgment that would compel the company to
defend him in the Katz litigation and to indemnify him against
any resultant liability. Both parties filed cross motions for
summary judgment. The trial court granted summary judg-
ment for appellant on the ground that respondent had not
demonstrated any prejudice resulting from appellant's failure
to file his claim before the policy expired. The Appellate
Division, 194 *N.J.Super.* 206 (1984), reversed in a split decision,
holding that the terms of the policy should be enforced literally.
The Appellate Division concluded that no considerations of pub-
lic policy justified the requirement that the insurance company
show prejudice in order to be relieved from liability when notifi-
cation of a claim was not given until after a "claims made" policy
expired. Appellant appealed to this Court as of right on the
basis of the dissent below. *R.* 2:2–1(a).

II

The type of professional liability insurance policy National
Union issued to appellant is commonly known as a "claims

made" or "discovery" policy. "Claims made" professional liability coverage has become increasingly prevalent during the past two decades, supplanting the "occurrence" policy, which until recently had been the typical form of professional liability insurance. *See* J. Parker, "The Untimely Demise of the 'Claims Made' Insurance Form? A Critique of *Stine v. Continental Casualty Company,*" 1983 *Det.C.L.Rev.* 25, 28–29, 71–72 & nn. 167–68; S. Kroll, "The Professional Liability Policy 'Claims Made,'" 13 *Forum* 842, 850 (1978); *see also* D. Shand, "'Claims Made' vs 'Occurrence,'" 28 *Int'l Ins. Monitor* 269 (Sept.,1974) (acknowledging trend toward greater use of "claims made" policies).

The standard definitions for "discovery" and "occurrence" policies appear in *Samuel N. Zarpas, Inc. v. Morrow*, 215 *F.Supp.* 887 (D.N.J.1963):

> [T]here are two types of Errors and Omissions Policies: the "discovery" policy and the "occurrence" policy. In a discovery policy the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurance company during the period of the policy, no matter when the act occurred. In an occurrence policy the coverage is effective if the negligent or omitted act occurred during the period of the policy, whatever the date of discovery. [*Id.* at 888.]

Variations on this definitional theme pervade the case law. The fundamental distinction between the two types of policies has been expressed in different terms and with differences in emphasis. For example, the court in *Brander v. Nabors*, 443 *F.Supp.* 764 (N.D.Miss.), aff'd, 579 *F.*2d 888 (5th Cir.1978), distinguished these policy types based on the period for which coverage is provided:

> Basically, the "claims made" policy would provide unlimited retroactive coverage and no prospective coverage at all, while the "occurrence" policy would provide unlimited prospective coverage and no retroactive coverage at all. [*Id.* at 767.]

"Claims made" and "occurrence" policies may also be distinguished on the basis of the difference in the peril insured. One commentator has noted:

> In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the occurrence takes place, coverage attaches even though the claim may not be

made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place. [S. Kroll, *supra*, 13 *Forum* at 843.]

"Occurrence" policies originated during a period in which the primary function of insurance was to provide coverage for property loss at sea. *See* 8 *W. Holdsworth, History of English Law* (2d ed., 1977) 273–74; 25 *Halsbury's Laws of England*, Insurance ¶ 1, at 9 (4th ed. 1978). These early policies insured against damage caused by collision, fire, war, and other identifiable events, the occurrence of which was relatively easy to ascertain. Accordingly, as the use of insurance increased, policies that focused on the occurrence as the peril insured became the standard form. *See* J. Parker, *supra*, 1983 *Det.C. L.Rev.* at 30; S. Kroll, *supra*, 13 *Forum* at 845; S. Kroll, " 'Claims Made'—Industry's Alternative: 'Pay as You Go' Products Liability Insurance," 637 *Ins.L.J.* 63, 64 (Feb., 1976).

With the development of a more complex industrial society, major underwriting disadvantages inherent in the use of the "occurrence" policy have become apparent in connection with certain kinds of perils. One of these underwriting disadvantages is that the insurer is faced with an unlimited "tail" that extends beyond the policy period. This "tail" is the lapse of time between the date of the error and the time the claim is made. D. Shand, *supra*, 28 *Int'l Ins. Monitor* at 270; Comment, "The 'Claims Made' Dilemma in Professional Liability Insurance," 22 *U.C.L.A.L.Rev.* 925, 928 (1975). This time lapse prevents insurers from making a precise calculation of premiums based upon the cost of the risks assumed. Not uncommonly, "occurrence" policy premiums have proven to be grossly inadequate to cover the inflationary increase in the cost of settling claims asserted years later. J. Parker, *supra*, 1983 *Det.C.L.Rev.* at 70–71; *R. Mallen and V. Levit, Legal Malpractice* § 709, at 889 (2d ed. 1981). Not only is this actuarial problem the result of inflation, but new theories of recovery in tort law and increased consumer awareness have contributed to an increase in the number of claims that undermines the

actuarial basis for premiums on occurrence policies issued years earlier. *See* D. Shand, *supra,* 28 *Int'l Ins. Monitor* at 270; S. Kroll, *supra,* 637 *Ins.L.J.* at 65, 68–69; S. Kroll, *supra,* 13 *Forum* at 846–47, 855; Comment, *supra,* 22 *U.C.L.A.L.Rev.* at 928. A further disadvantage of "occurrence" policies is that their long tail exposure can lead to situations in which the policy underwriter is no longer in existence at the time a claim is finally made. *R. Mallen and V. Levit, supra,* at 889; J. Parker, *supra,* 1983 *Det.C.L.Rev.* at 74.

The long tail exposure inherent in "occurrence" policies is less likely to be a problem in the context of certain more familiar perils, such as automobile accidents, where the insured event is easy to identify in terms of time and place, the resulting injury is immediately perceived, and a claim is typically asserted soon after the occurrence. In the context of professional malpractice or long-term exposure to hazardous environmental conditions, however, the injury and the negligence that caused it are often not discoverable until years after the delictual act or omission. Consequently, with these types of perils, claims will frequently be made years after the insured event, and long tail exposure becomes a significant problem. S. Kroll, *supra,* 13 *Forum* at 845; J. Parker, *supra,* 1983 *Det.C.L.Rev.* at 70–71; D. Shand, "Is Your Policy on a 'Claims Made' Basis?," *Weekly Underwriter,* Sept. 15, 1973, at 8.

An additional shortcoming associated with the use of "occurrence" policies for perils that can cause latent injuries over an extended period of time is the difficulty in determining precisely when the essential causal event occurred. This is particularly true in products liability, professional malpractice, and environmental litigation. *See R. Mallen and V. Levit, supra,* at 888–890; S. Kroll, *supra,* 637 *Ins.L.J.* at 65; J. Parker, *supra,* 1983 *Det.C.L.Rev.* at 30–31, 76–77; Comment, *supra,* 22 *U.C.L. A.L.Rev.* at 930; *Stine v. Continental Cas. Co.,* 419 *Mich.* 89, 99 & n. 3, 349 *N.W.*2d 127, 131 & n. 3 (1984). *See generally* J. Ingram, "Insurance Coverage Problems in Latent Disease and Injury Cases," 12 *Environ.L.* 317 (1982) (difficulties in ascer-

taining which insurer should be liable for claims resulting from latent injuries developing over long periods of time).

The obvious advantage to the underwriter issuing "claims made" policies is the ability to calculate risks and premiums with greater exactitude since the insurer's exposure ends at a fixed point, usually the policy termination date. J. Parker, *supra,* 1983 *Det.C.L.Rev.* at 73; S. Kroll, *supra,* 13 *Forum* at 847; Comment, *supra,* 22 *U.C.L.A.L.Rev.* at 928; S. Kroll, *supra,* 637 *Ins.L.J.* at 66; D. Shand, *supra,* 28 *Int'l Ins. Monitor* at 270–71. This may result in lower rates for the insured. *See, e.g., Stine v. Continental Cas. Co., supra,* 419 *Mich.* at 98, 349 *N.W.*2d at 131; J. Parker, *supra,* 1983 *Det.C.L. Rev.* at 73. A corollary benefit to the insured is that since coverage is purchased on a contemporary basis, it can afford protection in current dollars for liability that may be based on negligence that occurred years earlier. J. Parker, *supra,* 1983 *Det.C.L.Rev.* at 74; S. Kroll, *supra,* 13 *Forum* at 847; *see also* S. Kroll, *supra,* 637 *Ins.L.J.* at 66 (the insured can purchase limits of liability based on current trends and jury verdicts).

In addition, at least one commentator has suggested that the introduction of "claims made" policies has stabilized the insurance markets in which they are utilized:

> For example, the only national program for agents E[rrors] & O[missions] has been in effect for nearly two decades on a "claims made" basis while numerous "occurrence" insurers have come and gone in the field. The principle insurer of architects and engineers shifted from "occurrence" to "claims made" many years ago and has remained in the market while others have not. [D. Shand, *supra, Weekly Underwriter* at 8.]

In the vast majority of cases in which "claims made" policies have been challenged, their validity has been upheld by both federal and state courts. Many courts have explicitly held that "claims made" policies do not offend public policy. *Scarborough v. Travelers Ins. Co.,* 718 *F.*2d 702, 709–10 (5th Cir.1983) (applying La. law); *James & Hackworth v. Continental Cas. Co.,* 522 *F.Supp.* 785, 787 (N.D.Ala.1980) (applying Ala. law); *Brander v. Nabors, supra,* 443 *F.Supp.* at 772–74 (applying Miss. law); *Gulf Ins. Co. v. Dolan, Fertig & Curtis,* 433 *So.*2d

512, 514–15 (Fla.1983); *Livingston Parish School Bd. v. Fireman's Fund Am. Ins. Co.*, 282 *So.*2d 478, 481–83 (La.1973); *Stine v. Continental Cas. Co., supra,* 419 *Mich.* at 114–17, 349 *N.W.*2d at 138–39; *Lehr v. Professional Underwriters*, 296 *Mich.* 693, 296 *N.W.* 843, 844 (1941); *Gereboff v. Home Indem. Co.,* 119 *R.I.* 814, 819, 383 *A.*2d 1024, 1027 (1978); *Mission Ins. Co. v. Nethers,* 119 *Ariz.* 405, 408, 581 *P.*2d 250, 253 (App.Ct. 1978); *James J. Brogger & Assocs., Inc. v. American Motorists Ins. Co.,* 42 *Colo.App.* 464, 466, 595 *P.*2d 1063, 1065 (App.Ct. 1979); *Dement v. International Paper Co.,* 363 *So.*2d 952, 954 (La.Ct.App.1978); *Detroit Automobile Inter-Ins. Exchange v. Leonard Underwriters, Inc.,* 117 *Mich.App.* 300, 323 *N.W.*2d 679, 682 (Ct.App.1982); *Rotwein v. General Accident Group,* 103 *N.J.Super.* 406, 417 (Law Div.1968); *Heen & Flint Assocs. v. Travelers Indem. Co.,* 400 *N.Y.S.*2d 994, 997, 93 *Misc.*2d 1, 5 (Sup.Ct.1977).

Other courts have affirmed the validity of "claims made" policies simply by enforcing them. *Hunter v. Office of Health Servs. & Environmental Quality,* 385 *So.*2d 928 (2d Cir.1980); *Samuel N. Zarpas, Inc. v. Morrow, supra,* 215 *F.Supp.* 887; *VTN Consol., Inc. v. Northbrook Ins. Co., Inc.,* 92 *Cal.App.*3d 888, 155 *Cal.Rptr.* 172 (Dist.Ct.App.1979); *San Pedro Properties, Inc. v. Sayre & Toso, Inc.,* 203 *Cal.App.*2d 750, 21 *Cal. Rptr.* 844 (Dist.Ct.App.1962); *Graman v. Continental Cas. Co.,* 87 *Ill.App.*3d 896, 42 *Ill.Dec.* 773, 409 *N.E.*2d 387 (App.Ct.1980); *Breaux v. St. Paul Fire & Marine Ins. Co.,* 326 *So.*2d 891 (La. Ct.App.1976); *J.M. Brown Constr. Co. v. D & M Mechanical Contractors, Inc.,* 222 *So.*2d 93 (La.Ct.App.1969); *Middle Dep't Inspection Agency v. Home Ins. Co.,* 154 *N.J.Super.* 49 (App. Div.1977), certif. denied, 76 *N.J.* 234 (1978); *Reid v. Dayton Title Co.,* 31 *Ohio Misc.* 275, 278 *N.E.*2d 384 (Mun.Ct.1972).

Still other courts did not question the general validity of "claims made" policies, but rather interpreted a variety of policy terms and conditions in determining whether insurance coverage attached. *Hoyt v. St. Paul Fire & Marine Ins. Co.,* 607 *F.*2d 864, 866–67 (9th Cir.1979) (what constitutes a claim);

*Home Ins. Co. v. A.J. Warehouse, Inc.*, 210 *So.*2d 544, 552 (La.App.1968) (what constitutes prior knowledge); *Troy & Stalder Co. v. Continental Cas. Co.*, 206 *Neb.* 28, 290 *N.W.*2d 809, 812 (1980) (what constitutes notice); *Manacre Corp. v. First State Ins. Co.*, 374 *So.*2d 1100, 1102 (Fla.Dist.Ct.App. 1979) (is a claim sufficient notice); *Continental Cas. Co. v. Enco Assocs., Inc.*, 66 *Mich.App.* 46, 238 *N.W.*2d 198, 199 (Ct.App.1975) (to whom must a claim be directed); *Lapierre, Litchfield & Partners v. Continental Cas. Co.*, 32 *A.D.*2d 353, 302 *N.Y.S.*2d 370 (App.Div.1969) (what constitutes prior knowledge).

Courts have also had occasion to decline enforcement of "claims made" policies, because of inequities that have arisen in particular cases. *Cornell, Howland, Hayes & Merryfield, Inc. v. Continental Cas. Co.*, 465 *F.*2d 22, 24 (9th Cir.1972) (coverage upheld despite written exclusion because of oral representations of agent made to secure customer's patronage); *Stein, Hinkle, Dawe & Assocs., Inc. v. Continental Cas. Co.*, 110 *Mich.App.* 410, 313 *N.W.*2d 299 (App.Ct.1981) (reformation of insurance policy due to agent's abuse of the special relationship which existed between the parties); *Heen & Flint Assocs. v. Travelers Indem. Co.*, *supra*, 400 *N.Y.S.*2d 994, 93 *Misc.*2d 1 (coverage upheld in situation in which continued coverage with same protection is no longer available to the insured).

Invariably, litigants challenging the validity of "claims made" policies do so on grounds of public policy, arguing that the limitation of coverage to claims filed within the term of the policy defeats the reasonable expectations of the insured and, accordingly, violates public policy. This was the contention asserted in *Gulf Ins. Co. v. Dolan, Fertig & Curtis, supra*, 433 *So.*2d at 514. There, the Supreme Court of Florida upheld the coverage limitations in the "claims made" policy at issue and commented as follows:

> Respondent has argued to this Court that we should strike down all claims-made liability insurance policies as being inequitable agreements and thus in violation of public policy. This we decline to do. Consistent with the views of

numerous of our sister courts, we believe that claims-made policies are not "patently offensive or inimical to the public welfare ... [nor do they] have a clear capacity to support or encourage conduct which is deleterious, anti-social or unlawful." *Rotwein v. General Accident Group,* 103 *N.J.Super.* 406, 416, 247 *A.*2d 370, 376 (1968). [*Id.*]

Similarly, in *Brander v. Nabors, supra,* 443 *F.Supp.* 764, defendant contended that "claims made" insurance policies violated the public policy of the State of Mississippi and that their restrictions on coverage should be invalidated. Rejecting this contention, the court observed:

Given this type of contract, we are unable to perceive that the public policy of Mississippi is offended by the insurance agreement which Lloyd's has written. Obviously, it is not against the public interest that professional practitioners, for example, doctors, lawyers, engineers, and architects, be able to obtain insurance on a reasonably structured "claims made" basis, rather than being left in the position of being able to obtain insurance only on an "occurrence" basis at what may perhaps be exorbitant rates that few could afford.

We are firmly convinced that the freedom to contract in this manner is not inimical to the public interest. [*Id.* at 773–74.]

In *Rotwein v. General Accident Group, supra,* 103 *N.J.Super.* 406, plaintiff architects had been covered by a "claims made" policy that was issued by defendant insurer in 1961 and expired in 1964. In 1963 plaintiffs performed architectural services, and in 1966 they first received notice of a claim that these services had been negligently performed. Plaintiffs sought to establish insurance coverage even though the claim against them was asserted after their policy had expired. Plaintiffs contended that their insurance agreement impermissibly restricted their freedom of contract because it required them to repurchase insurance from defendant continuously in order to secure uninterrupted liability protection, and therefore the agreement was contrary to public policy. *Id.* at 417. Rebutting this contention, Justice (then Judge) Handler concluded:

It has not been shown that such insurance protection is so inadequate or utterly inappropriate to the reasonable needs of a professional architect that it may be considered oppressive or unfair.

In sum, the provisions of the General Accident insurance policy are plain and unambiguous; they clearly require as a condition of coverage that a claim on account of negligent acts, errors or omissions be brought within the policy

period. Plaintiffs have failed to demonstrate that the General Accident insurance policy has any capacity to inhibit or discourage freedom of contract contrary to established notions of public policy, or that the particular provisions of the policy are manifestly unfair, or that these terms were in fact imposed upon plaintiffs, who were disadvantaged through a subservient bargaining position. General Accident is entitled to summary judgment. [*Id.* at 420.]

In only a small number of cases that presented special factual circumstances have courts refused to uphold the coverage limitations of "claims made" policies. *J.G. Link & Co. v. Continental Cas. Co.*, 470 *F.*2d 1133 (9th Cir.1972), *cert.* denied, 414 *U.S.* 829, 94 *S.Ct.* 55, 38 *L.Ed.*2d 63 (1973), involved an architect's errors and omissions policy that provided protection only "if claim ... is first made against the insured during this policy period." During the policy period, a client notified the architect of facts suggesting a design defect, but the architect did not report a claim to the insurance company until suit was instituted after the policy had expired. Due to certain ambiguities in policy language, the court declined to enforce the policy's limitation on coverage:

In the instant case, the insurance contract is ambiguous in that it is not clear whether the policy is a "discovery" or an "occurrence" policy, and it is likewise unclear whether information given the insured in October 1966 constituted a claim within the terms of the policy. * * *

\*     \*     \*     \*     \*     \*     \*     \*

* * * The insurer will not be permitted under these circumstances to claim the legal benefits of one type policy while denying the detrimental consequences of the same type policy. [*Id.* at 1136, 1137.]

Similarly, in *Gyler v. Mission Ins. Co.*, 10 *Cal.*3d 216, 514 *P.* 2d 1219, 110 *Cal.Rptr.* 139 (1973), the Supreme Court of California refused to enforce the limitations of a "claims made" malpractice policy where it found a material ambiguity in the coverage provisions. The court held that a policy insuring against claims "which may be made" was ambiguous since the word "may" could be understood to cover claims that might possibly be, but in fact were not, presented to the insurer during the policy term. In finding coverage, the court construed the insurance policy in accordance with the insured's reasonable expectation of coverage and the doctrine that all

doubts are to be resolved against the insurer. *Id.* at 220, 514 *P. 2d* at 1221, 110 *Cal.Rptr.* at 141.[2]

*Jones v. Continental Cas. Co.*, 123 *N.J.Super.* 353 (Ch.Div. 1973), is widely cited by both courts and commentators for its refusal on public policy grounds to enforce a "claims made" policy with limited retroactive coverage for acts occurring prior to the policy's effective date. In *Jones*, plaintiff was a professional engineer who purchased from defendant insurance company an errors and omissions policy with coverage commencing in February, 1965. This policy was renewed annually until plaintiff allowed it to expire in April, 1970. In August, 1971, plaintiff was sued by a contractor for negligence in connection with engineering services performed during the effective period of defendant's insurance policy. Defendant denied coverage because the provisions of its "claims made" policy limited coverage to claims made against the insured during the policy period.' The policy's retroactive coverage was unusual in that it was limited to those "errors and omissions or negligent acts which occur * * * prior to *the effective date of this policy* if * * * insured by this Company under [a] prior policy * * *." *Id.* at 356. The court held that this limited retroactive coverage impermissibly "inhibit[ed] freedom of contract. In order for plaintiff to maintain coverage or have continuity of coverage, he [had to] continue to have defendant as the insurance carrier." *Id.* at 359. Accordingly, the court declined to enforce the coverage limitations in defendant's policy, concluding, on grounds of public policy, that such limitations were inconsistent with plaintiff's "reasonable expectations" of coverage and that plaintiff's notice to defendant was sufficiently timely to invoke coverage under the policy. *Id.* at 359, 363.

---

2Other California cases have upheld "claims made" policies. *See, e.g., VTN Consol. Inc. v. Northbrook Ins. Co., supra,* 92 *Cal.App.*3d 888, 155 *Cal.Rptr.* 172. Moreover, "claims made" policies are specifically authorized by a California statute that requires that the face sheet bear prominent notice of the fact that the policy is issued on a "claims made" basis. Cal.Ins.Code § 11580.01 (West Supp.1985). There is no analogous New Jersey statute.

Other courts, however, have declined to follow the *Jones* result in situations in which "claims made" policies have had limited retroactive protection similar to that in *Jones*. *Livingston Parish School Bd. v. Fireman's Fund Am.Ins.Co.*, *supra*, 282 *So.*2d 478; *Stine*, *supra*, 419 *Mich.* 89, 349 *N.W.*2d 127; *Gereboff*, *supra*, 119 *R.I.* 814, 383 *A.*2d 1024. This has been true even though at least one proponent of "claims made" policies has acknowledged that the coverage afforded by the *Jones*-type policy was unusually narrow. J. Parker, *supra*, 1983 *Det.C.L.Rev.* at 36–37 & nn. 38–39; *cf. Middle Dep't Inspection Agency v. Home Ins. Co.*, *supra*, 154 *N.J.Super.* at 55–56 ("The engineer or architect would not reasonably presume that an insurance carrier would cover his acts or deficiencies which took place before he purchased the policy unless there was an affirmative provision to that effect."); *Brander v. Nabors*, *supra*, 443 *F.Supp.* at 770 ("While coverage for acts of malpractice occurring prior to the effective date of a policy is a feature common to many 'claims made' policies * * *, we see nothing in the provisions of this policy * * * limiting coverage to acts * * * occurring during the life of the policy * * * that violate any statute or any judicially-recognized principle of insurance law."). *But see* Note, "The Role of Public Policy and Reasonable Expectations in Construing Insurance Contracts," 47 *Temp.L.Q.* 748, 756–57 (1974) (questioning whether the limited retroactive coverage in *Jones* constitutes a relevant distinction). For a more detailed discussion of retroactive coverage in "claims made" policies, see *Sparks*, *supra*, 100 *N.J.* at 332–334, 339–341.

### III

The policy issued to appellant contains no unusual limitations in its retroactive coverage nor is the scope of its coverage clouded by ambiguity similar to that relied upon by the courts in *Link* and *Gyler*. Respondent's policy afforded Zuckerman unlimited retroactive coverage, excluding only those claims based on past conduct that the insured knew, or could have

reasonably foreseen, might lead to a claim or suit.[3] There is no suggestion that appellant's reasonable expectations of coverage were unfulfilled. Appellant testified that he had elected not to notify respondent insurance company of the Katz claim in the hope that it could be settled without involving his insurance carrier. Appellant, nevertheless, contends that on public policy grounds the contract's coverage limitations should not strictly be enforced absent appreciable prejudice to respondent because of the late notification.

■ A condition to the enforcement of insurance contracts is that they not violate public policy. *Rotwein v. General Accident Group, supra,* 103 *N.J.Super.* at 416; *Jorgenson v. Metropolitan Life Ins. Co.,* 136 *N.J.L.* 148, 152 (Sup.Ct.1947); 6B *Appleman, Insurance Law and Practice,* §§ 4252, 4254 (1979); 29 *Am.Jur.* 2d, *Insurance* §§ 260–65 (1982); 44 *C.J.S., Insurance* §§ 241–43 (1945). The term "public policy" contemplates a standard measured by the impact upon the public at large rather than the individual:

> Public policy * * * underlies all judicial action. Stemming from our state and federal constitutions, it is * * * public policy to uphold the freedom of contract, but this court is reluctant to enforce the exercise of that freedom where it tends to result in injury to persons beyond the immediate parties. [*Jorgenson v. Metropolitan Life Ins. Co., supra,* 136 *N.J.L.* at 153.]

■ On public policy grounds, insurance contracts have consistently been construed strictly against insurance companies. The rationale is that insurance contracts are contracts of adhesion since an individual's bargaining power is necessarily limited. Accordingly, such contracts are to be interpreted in a manner that recognizes the reasonable expectations of the

---

[3]The reasonableness of excluding claims based on prior conduct that the insured could reasonably have foreseen might serve as the basis for a future claim is apparent. The insurance company is entitled to protect itself against the professional who, recognizing his past error or omission, rushes to purchase a "claims made" policy before the error is discovered and a claim asserted against him. *Brander v. Nabors, supra,* 443 *F.Supp.* at 773. This insurance company concern has been termed the "moral hazard." D. Shand, *supra, Weekly Underwriter* at 8.

insured. *Di Orio v. New Jersey Mfrs. Ins. Co.*, 79 *N.J.* 257, 269 (1979); *Gerhardt v. Continental Ins. Cos.*, 48 *N.J.* 291, 297 (1966); *Allen v. Metropolitan Life Ins. Co.*, 44 *N.J.* 294, 305 (1965).

We find no considerations of public policy that would inhibit our enforcement of the "claims made" policy issued to appellant. The scope of coverage afforded by the policy is consistent with the coverage customarily provided by "claims made" policies. The retroactive coverage is substantially unrestricted and there is no suggestion, as was the case in *Jones, supra,* 123 *N.J.Super.* at 359, of any limitation on appellant's freedom to contract with other companies. While it is true that "claims made" type policies are not as familiar to the general public as "occurrence" policies, the provisions of appellant's policy were unambiguous. *See Reid v. Dayton Title Co., supra,* 278 *N.E.*2d at 386. Furthermore, the declaration page of the penultimate renewal policy (and presumably of all of the other policies issued to him) bore a legend in bold letters stating, "This Is A Claims-Made Policy—Read Carefully." Appellant's testimony at depositons indicated that the failure to notify respondent of the Katz claim was a deliberate choice based on his assessment of the situation and was not attributable to his failure to understand the policy terms.

In this connection, we note that the attempt to expand the coverage of this "claims made" policy has been made by the insured rather than the third party injured as a result of the insured's malpractice. Unquestionably, a member of the public who sustains financial loss due to the malpractice of an insured covered by a "claims made" policy may be seriously disadvantaged if the insured is insolvent and the insurer is not put on notice before the policy expires. The public policy interest at stake in such cases, however, is better vindicated by legislation or regulation designed to assure uninterrupted malpractice

insurance coverage for professionals rather than by the invalidation of "claims made" policies.[4] A member of the public served by a professional with no insurance or by one whose "occurrence" policy has lapsed is as subject to injury and prejudice as a client serviced by a professional whose "claims made" policy has not been renewed. The potential for public injury derives more from the termination or nonexistence of coverage than it does from the form of the policy. Accordingly, we do not consider the standard "claims made" form of coverage to contravene public policy either from the standpoint of the professional or the professional's clients.

## IV

Appellant contends, however, that notwithstanding the general enforceability of a "claims made" insurance policy, this Court should require the insurance company to prove "appreciable prejudice" in order to avoid coverage in a case where a claim has not been reported until after the expiration of the policy. Appellant cites *Cooper v. Government Employees Ins. Co.*, 51 *N.J.* 86 (1968), and argues that the doctrine of "appreciable prejudice" established in that case is applicable to the "claims made" liability policy at issue here.

*Cooper* concerned coverage under an automobile liability policy for an accident that occurred in August, 1962, but was reported to the insurance company almost two years later. There had been no damage to either vehicle, and although the passenger in plaintiff's vehicle had complained of minor injuries at the time of the accident, she never indicated to Mrs. Cooper

---

[4]Note, for example, that pursuant to Court Rule 1:21–1A(a)(3) attorneys' professional corporations are required to obtain and maintain in good standing lawyers' professional liability insurance. The 1981 amendment to the Rule further increased the minimum limits on this mandatory insurance for the protection of the public.

that she believed her to be culpable or that she intended to file suit. Under the terms of the policy, notice of the accident had to be given "as soon as practicable" and Mrs. Cooper did not notify her carrier until suit was instituted against her almost two years after the accident. In concluding that Mrs. Cooper did not lose the protection of her policy, because she omitted in good faith to give notice in the belief that no claim would be asserted against her, this Court observed:

> This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds. It would also disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated. To that end companies are franchised to sell coverage. We should therefore be mindful also of the victims of accidental events in deciding whether a forfeiture should be upheld.
>
> The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's.
>
> The evidence well supported the trial court's finding that the insureds acted reasonably and in good faith and that therefore the notice provision was not breached. [*Id.*, 51 *N.J.* at 94 (footnotes omitted).]

Appellant would have us apply the *Cooper* doctrine to the "claims made" policy at issue here. We disagree. The automobile liability policy in *Cooper* was a classic occurrence policy that provided the insured with coverage in the event of her negligence. The notice requirement in that policy did not define the coverage provided by the policy but rather was included to aid the insurance carrier in investigating, settling, and defending claims. By statute, failure to give the notice required by such a policy will be excused if notice is given as soon as reasonably possible. *N.J.S.A.* 17:28–2.[5] Accordingly,

---

[5]*L.*1924, *c.* 153.

the requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed.

By contrast, the event that invokes coverage under a "claims made" policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, *gratis*, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy. Obviously, such an expansion in the coverage provided by "claims made" policies would significantly affect both the actuarial basis upon which premiums have been calculated and, consequently, the cost of "claims made" insurance. So material a modification in the terms of this form of insurance widely used to provide professional liability coverage both in this State and throughout the country would be inequitable and unjustified. The *Cooper* doctrine has a clear application to policies analogous to the automobile liability policy there involved. It has, however, no application whatsoever to a "claims made" policy that fulfills the reasonable expectations of the insured with respect to the scope of coverage.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.