NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2060

_____

ATLANTIC HEALTH SYSTEM, INC; AHS HOSPITAL
CORP; ATLANTIC AMBULANCE CORP.,

Appellants

v.

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH; AMERICAN INTERNATIONAL GROUP

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-08-cv-01661)
District Judge: Honorable Garret E. Brown, Jr.

_____

Submitted Under Third Circuit LAR 34.1
February 10, 2012

Before:    SLOVITER and VANASKIE, *Circuit Judges*,
and POLLAK,* *District Judge*

(Filed February 29, 2012)

_____

OPINION OF THE COURT

_____

VANASKIE, *Circuit Judge.*

_____

* Honorable Louis H. Pollak, Senior Judge of the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

Atlantic Health System, Inc., AHS Hospital Corp., and Atlantic Ambulance Corp. (collectively, "AHS") brought an action against National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and American International Group (collectively, "National Union"),[1] challenging the denial of coverage under an insurance policy. The District Court granted National Union's motion for summary judgment, and we will affirm.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

On April 5, 2004, Med Alert Ambulance, Inc. ("Med Alert") filed an antitrust complaint against AHS. *See Med Alert Ambulance, Inc. v. Atl. Health Sys., Inc.*, No. 04-1615, 2007 WL 2297335 (D.N.J. Aug. 6, 2007). AHS contends that it was entitled to defense and indemnification in connection with the Med Alert action under its National Union claims-made insurance policy that was in effect from May 1, 2003 to May 1, 2004.[2]

On July 23, 2004, AHS sent a "First Notice of Loss" letter to National Union, requesting coverage under Policy No. 316-29-70, which was effective from May 1, 2004 to May 1, 2005 (the "2004-2005 Policy"). The request for coverage under the 2004-2005 Policy was denied because AHS had notice of the underlying Med Alert claim prior to the inception of the 2004-2005 Policy coverage.

---

[1] National Union is a member company of American International Group.

[2] AHS ultimately settled the Med Alert action for $800,000, and allegedly incurred more than $1.3 million in attorneys' fees and costs in defending against the Med Alert action.

On August 17, 2004, AHS sent a second letter to National Union marked "First Report of a new loss" and requested coverage under Policy No. 382-77-89, which was in effect from May 1, 2003 to May 1, 2004 (the "2003-2004 Policy"). That request was denied because notice of the Med Alert claim had not been provided to National Union during the policy period, or within the policy's 30-day notice period. Because the Med Alert action was filed on April 5, 2004, AHS was required under the terms of the 2003-2004 Policy to provide written notice of the Med Alert claim to National Union no later than May 5, 2004.

Within the 2003-2004 policy period, however, AHS had submitted to National Union two renewal applications, one handwritten and the other typed, that revealed AHS's involvement in the Med Alert suit. Specifically, AHS answered in the affirmative the following questions on the renewal applications:

> 21. Has the Applicant, any of its Subsidiaries, any of its Affiliates or any Director, Officer or Trustee:
>
> (a) Been involved in any antitrust, copyright or patent litigation?    _X_ Yes        __ No
>
> (b) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state antitrust or fair trade law?    _X_ Yes        __ No
>
> . . . .
>
> (d) Been involved in any representative actions, class actions, or derivative suits?  _X_ Yes        __ No

(A. 412a.) AHS further clarified these answers by noting that "AHS and Atlantic Ambulance have been named, together with Newton Memorial Hospital, in a civil action

3

filed by Med Alert Ambulance Co. alleging unfair trade practices and anti-trust violations with respect to the transport of cardiac patients from Newton to Morristown Memorial." (A. 337a.) The renewal applications were sent to Christine McSweeny, a National Union underwriter who worked at 80 Pine Street, New York, NY.

Article VII of the 2003-2004 Policy, which is titled "NOTICE/CLAIM REPORTING PROVISIONS," states that "[n]otice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations." (A. 93a.) Item 8 specifies that the address of National Union is "175 Water Street[,] New York, NY." (A. 83a.) Though the renewal applications were not sent to the Water Street address, AHS argued that statements made in the renewal applications gave National Union actual notice of the Med Alert claim, and National Union therefore should not have denied coverage under the 2003-2004 Policy.[3]

AHS initiated this action in the Superior Court of New Jersey, Law Division, on February 18, 2008. National Union removed the action to federal court on the basis of diversity jurisdiction. AHS sought declaratory and monetary relief. National Union argued as an affirmative defense that AHS's requests for relief were barred by its failure to provide timely notice of the Med Alert claim in accordance with the terms of the policy. The parties presented their respective contentions to the District Court on cross motions for summary judgment.

---

[3] On appeal, AHS does not contend that it was entitled to coverage under the 2004-2005 Policy, nor does it dispute that the August 17, 2004 letter was untimely under the terms of the 2003-2004 Policy.

Applying New Jersey law, the District Court found that the AHS renewal applications did not satisfy the claim reporting requirements of Article VII of the 2003-2004 Policy because "[t]he policy language at issue clearly requires written notice of a claim to a specified address within a specified time period." *Atl. Health Sys., Inc., v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 2-08-cv-01661, 2011 WL 1375611, at *5 (D.N.J. Apr. 20, 2011). Observing that strict adherence to the claims reporting provisions in a claims-made policy is essential, and that it was indisputable that the renewal applications were not sent to the address specified in the Policy, the District Court granted summary judgment in favor of National Union.

## II.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291. Our review of a grant of summary judgment is *de novo*, and we apply the same standard as the District Court. *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). "This requires that we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Id.* Summary judgment shall be granted where no genuine dispute exists as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

We observe that the facts giving rise to this coverage contest are not in dispute. What is in dispute are the legal consequences flowing from the undisputed facts. Accordingly, we turn out attention to the questions of law arising from the historical facts related above.

5

A.

AHS first contends that it did comply with Article VII of the 2003-2004 Policy, because the renewal applications were "written" and were "given" to National Union:

> There is nothing in the Policy that specifies any form or format for the insured to follow in giving notice of the claim to National Union, other than the notice must be in writing. The District Court essentially read additional terms into the Policy . . . . The Policy does not require notice to be 'mailed.' To the contrary, the Policy requires notice to be 'given.' The undisputed facts before the District Court established that AHS gave National Union actual notice of the Med Alert claim in writing during the Policy Period.

(Appellant's Br. at 18-19.)

The argument advanced by AHS is based upon a selective reading of Article VII that disregards the policy directive that notice be given to National Union at a specifically prescribed address. Titled "NOTICE/CLAIM REPORTING PROVISIONS," Article VII explicitly provides that "[n]otice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations *at the address indicated in Item 8 of the Declarations*." (A. 93a.) (emphasis added). There is no dispute that Item 8 identified National Union as the "Insurer" and its address as 175 Water Street, New York, NY 10038. Though the renewal applications were in writing, they were not given to National Union at its Water Street address.

AHS contends that the failure to give notice at the Water Street address is immaterial given that the Pine Street address to which the renewal applications were sent is a mere "one-tenth of a mile away." (Appellant's Reply Br. at 14.) AHS concludes that it is entitled to coverage under the 2003-2004 Policy because it is "undisputed . . .

6

that National Union actually received the renewal applications within the time specified by the Policy." (Appellant's Reply Br. at 14.)

The parties agree that New Jersey law controls the interpretation of this claims-made insurance policy. The leading case in New Jersey on this subject is *Zuckerman v. National Union Fire Insurance Co.*, 495 A.2d 395 (N.J. 1985), which held that the reporting requirements of claims-made insurance policies must be applied strictly. The Supreme Court of New Jersey explained that strict adherence to the claims reporting requirements of a claims-made policy is based upon the fact that, unlike a typical "occurrence" policy, in which coverage is triggered by an event within the policy period, coverage under a claims-made policy is triggered by the transmittal of notice of the claim within the policy period. The New Jersey high court elaborated:

> In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.

*Id.* at 398(quoting Sol Kroll, *The Professional Liability Policy "Claims Made,"* 13 FORUM 842, 843 (1978)). Because of this difference, explained the Court, "the requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed." *Id.* at 406. In the claims-made context, however, the opposite is true, and extending the notice period against the insurer "would be inequitable and unjustified." *Id.*

7

In *American Casualty Co. of Reading, Pennsylvania v. Continisio,* 17 F.3d 62 (3d Cir. 1994), we acknowledged that *Zuckerman* attributed great significance to the fact that "[n]otice provisions serve different purposes in occurrence and claims-made policies." *Id.* at 68. Notice provisions in an occurrence policy are given a liberal and practical construction because they do not define coverage, but merely assist the insurer to investigate and resolve claims. By way of contrast, as recognized in *Zuckerman,* the coverage trigger in a claims-made policy is the submission of the claim. *Id.* We noted in *Continisio* that "[c]laims-made policies are less expensive because underwriters can calculate risks more precisely since exposure ends at a fixed point. Extension of time periods would significantly increase both the risk to insurers and the cost to insureds." *Id.* We concurred with the Fifth Circuit in concluding that "[b]ecause notice of a claim or potential claim defines coverage under a claims-made policy, we think that the notice provisions of such a policy should be strictly construed." *Id.* at 69 (quoting *FDIC v. Barham*, 995 F.2d 600, 604 n.9 (5th Cir. 1993)).

AHS attempts to distinguish *Continisio*, asserting that *Continisio* was about "constructive notice," while the case at hand involves "actual notice." As AHS explains, "[i]n *Continisio*, the insured submitted a renewal application to its insurer in which it *denied* knowledge of potential claims." (Appellant's Br. at 18.) The insurer, therefore, had to draw an inference from the information provided in the rest of the application that there was a possible claim. AHS argues that the Third Circuit in *Continisio* was "concerned about a situation 'where the [insured's] directors and officers would be better served to disguise potential claims so that they would be covered by insurance well into

the future while not drawing attention to conduct that might increase future premiums, or terminate coverage altogether.'" (Appellant's Br. at 26.) (quoting *Continisio*, 17 F.3d at 68).

AHS contends that our concern in *Continisio* regarding misconduct is absent in the case at hand: "unlike the insured in *Continisio* and the other cases cited by the Third Circuit, AHS answered "YES" to the questions on both [renewal] applications asking for disclosure of anti-trust litigation." (Appellant's Br. at 28.) AHS concludes that because its renewal applications provided National Union with actual as opposed to constructive notice, *Continisio* can be distinguished and AHS should be entitled to coverage under the 2003-2004 Policy.

AHS misreads *Continisio*. While misconduct and the concealment of potential claims was one concern expressed in *Continisio*, we were also motivated by more practical concerns. As we explained in that case, in the claims-made context:

> [T]he only reasonable interpretation of the policy provision is that the insureds must regard the information they possess as a potential claim and formally notify their insurer through its claims liability department that a claim may be asserted. . . . [N]otice must be given through formal claims channels because we recognize that the information needed, or at least the perspective utilized in reviewing it, varies when predicting the probability of future losses and recognizing the need to investigate a claim that may be made based on past occurrences.

*Continisio*, 17 F.3d at 69 (citations omitted). Similarly, an insured such as AHS must give notice of a purportedly covered claim at the address specified by the insurer to facilitate the claims-handling process.

9

AHS's renewal application to National Union's underwriters was simply not a formal claim. AHS artfully ignores the fact that in *Continisio* we had specifically concluded that it was not reasonable for "an insured [to] insist[] that its insurer's underwriting department sift through a renewal application and decide what should be forwarded to the claims department on the insured's behalf," which is precisely what AHS argues National Union should have done. *Id.* AHS was properly denied coverage because it failed to strictly comply with the reporting requirements of its claims-made policy.

B.

AHS argues, however, "that National Union waived its right to argue that notice of [the] Med Alert claim did not comply with the terms of the Policy," because "[i]f notice provided to an insurer is considered by the insurer to be defective, good faith requires the insurer to notify the insured of its objections within a reasonable time." (Appellant's Br. at 38.) (citing *FDIC v. Interdonato*, 988 F. Supp. 1, 10 (D.D.C. 1997); *Fed. Sav. & Loan Ins. Corp. v. Burdette*, 718 F. Supp. 649, 653 (E.D. Tenn. 1989); *JPMorgan Chase & Co. v. Travelers Indem. Co.*, 897 N.Y.S.2d 405 (App. Div. 2010)). AHS offers no New Jersey authorities in support of this principle. Furthermore, the cases cited by AHS are distinguishable.

In *Burdette*, the insured wrote to the insurer identifying probable claims with "the purpose" of giving the insurer "notice of this potential." 718 F. Supp. at 652. The insurer, meanwhile, responded to these letters in a way that:

10

> [I]ndicated that [the insurer] thought notice was proper, as claim files were opened and [the insurer] stated that it would await the commencement of formal litigation against the officers and directors before it would take any further action. This is action consistent with the appearance that [the insurer] believed notice was appropriate and that whenever a claim was filed, it would act as if the claim was filed within the policy period.

*Id.* at 654.

In *Interdonato*, similarly, the insured notified the insurer "of the possibility of claims against the directors," and the insurer responded in such a way that "implied that [the insured] did not need to provide any additional notice relating to director liability until a claim had been filed against them." 988 F. Supp. at 10. Likewise, in *JPMorgan* the insured informed the insurer via e-mail that it "anticipated" being "named in litigation," and listed a number of specific allegations that could be brought against the insured. 897 N.Y.S.2d at 408. The insurer "acknowledge[d] receipt of the correspondence," and informed the insured "of the name of the individual assigned to the matter." *Id.* It was not until the coverage litigation was commenced that the insurer first asserted that the notice was deficient. As the court observed in that case, "[i]t is beyond cavil that the entire purpose of the notice, from both the perspective of the insured and the insurers . . . was 'to [provide] . . . notice of the [impending litigation].'" *Id.* at 410 (citation omitted).

AHS, in contrast to the insureds in these cases, wrote of the Med Alert litigation in its renewal applications to National Union's underwriting department because it was required to identify claims that would be excluded from coverage under a future policy.

11

As the District Court observed, "nothing about the renewal application purports to inform the insurer that the insured is seeking to file a claim for coverage under an existing policy." *Atl. Health Sys., Inc.,* 2011 WL 1375611, at *6.

"Waiver is the voluntary and intentional relinquishment of a known right." *Knorr v. Smeal*, 836 A.2d 794, 798 (N.J. 2003) (citations omitted). National Union, unlike the insurers in the cases cited by AHS, did nothing to voluntarily and intentionally relinquish its right to notice given in accordance with the Policy terms. The District Court again properly noted that National Union never "represented – either affirmatively or tacitly – that disclosure of claims on a renewal application would satisfy the notice-of-claim requirement." *Atl. Health Sys., Inc.,* 2011 WL 1375611, at *6. Accordingly, we hold that National Union did not waive the defect in the purported "actual notice" of the Med Alert claim provided in the renewal applications.

C.

AHS last argues that "[t]he District Court erred in considering extrinsic evidence," because it had "found the policy language to be unambiguous." (Appellant's Br. at 37.) Specifically, AHS disputes the District Court's examination of "AHS's prior and subsequent history of submitting claims to the Water Street address," which revealed that AHS had a "history of compliance" with National Union's notice-of-claim provisions. *Atl. Health Sys., Inc.,* 2011 WL 1375611, at *6.

As an initial matter, we note that even if we were to accept AHS's argument here, the result would be the same. If extrinsic evidence should not have been considered,

AHS would be in precisely the same position – unable to recover because it failed to meet the unambiguous notice requirements of the 2003-2004 Policy.

Nevertheless, we observe that "a policy of insurance is simply a contract and its provisions should, of course, be construed as in any other contract." *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 151 (3d Cir. 1992) (quoting *Caruso v. John Hancock Mut. Life Ins. Co.*, 57 A.2d 359, 360 (N.J. 1948)). The Supreme Court of New Jersey has held that it considers course of performance as relevant in the interpretation of contracts. *See State Troopers Fraternal Ass'n of N.J., Inc. v. State*, 692 A.2d 519, 524 (N.J. 1997). Clearly, the District Court did not err in considering AHS's previous and subsequent compliance with National Union's notice-of-claim provisions.

## III.

For the foregoing reasons, we will affirm the District Court's judgment.[4]

---

[4] In light of our conclusion on the defective notice issue, there is no need to examine whether American International Group is separately liable to AHS.

13