GUARANTEE INSURANCE COMPANY, A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF-APPELLANT, v. DAVID A. SALTMAN, ESQ., NEWMAN, HERMAN, SALTMAN, LEVITT & FEINSON, P.A., JOHN FREDERICK, ESTHER FAUSTI, GAIL MESZAROS, DEFENDANTS, AND ST. PAUL FIRE & MARINE INSURANCE CO., DEFENDANT-RESPONDENT.[1]

Superior Court of New Jersey
Appellate Division

Argued March 18, 1987—Decided May 21, 1987.

---

[1]This appeal has been calendared back to back with Docket No. A–4046–85T1, which arises out of the same Law Division action. This opinion is concerned with an appeal by Guarantee Insurance Company from a judgment dismissing its complaint against defendant St. Paul Fire & Marine Insurance Company and declaring that its policy, and not the St. Paul policy affords, coverage for the insured defendants David A. Saltman, Newman, Herman, Saltman, Levitt & Feinson, P.A., for a professional liability claim. A separate opinion has been filed under No. A–4046–85T1.

1

See also, 217 N.J.Super. 604, 526 A.2d 731.

Before Judges KING, DEIGHAN and HAVEY.

*Michael N. Gordon,* argued the cause for appellant (*Carney & Wilson,* attorneys; *Michael N. Gordon,* on the brief).

*Fred Ira Eckhaus* argued the cause for respondent (*Widman & Cooney,* attorneys; *Fred Ira Eckhaus,* on the brief).

DEIGHAN, J.A.D.

The judgment of the Law Division is affirmed essentially for the reasons set forth by Judge Fox in his oral opinion delivered on October 2, 1985 and in his written letter opinion pursuant to *R.* 2:5–1(b), dated December 17, 1985.

Plaintiff Guarantee Insurance Company (Guarantee) filed a complaint against defendants-attorneys David A. Saltman, Newman, Herman, Saltman, Levitt & Feinson, P.A. (defendants) to rescind or reform an attorney's malpractice errors and omissions insurance policy and to determine Guarantee's coverage of a malpractice claim against defendants. Guarantee also

sought to have respondent St. Paul Fire & Marine Insurance Company (St. Paul) declared as the primary or co-insurer of defendants.[2]

In his written letter opinion of December 17, 1985, Judge Fox noted that "[i]n the trial before me the issue of which policy covered the Newman firm was raised and tried." He found as a fact "that Newman in the letter of May 18, 1982 to the Couch Agency, in clear and unequivocal language, cancelled its professional liability insurance coverage with St. Paul, effective May 1, 1982." He then determined that "[o]n May 6, 1982, Guarantee issued a professional liability policy to be effective as of May 1, 1982." As a result, Guarantee's complaint against all defendants was dismissed.

On this appeal Guarantee, in addition to the issues tried before Judge Fox, contends that the St. Paul policy is an "occurrence" policy rather than a "claims made" policy which provides coverage for defendants against the claims by Frederick, Fausti and Meszaros, relying on *Sparks v. St. Paul Ins. Co.*, 100 *N.J.* 325 (1985). We disagree.

In *Zuckerman v. Nat. Union Fire Ins. Co.*, 100 *N.J.* 304 (1985), a companion case to *Sparks,* an attorney instituted an action against National Union for an alleged wrongful refusal to defend. The Court held that a provision in a claims made policy barring coverage for claims reported subsequent to the expiration date of the policy was valid. The Court made a comprehensive analysis concerning the distinction between a "claims made," and a "discovery" policy. *Id.* at 309–319. The Court, quoting *Samuel N. Zarpas, Inc. v. Morrow,* 215 *F.Supp.* 887, 888 (D.N.J.1963), stated: "In a discovery policy the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurance company during the

---

[2]John Frederick, Esther Fausti and Gail Meszaros, the plaintiffs in the malpractice action, were also defendants in the action. No appeal is taken by or against these defendants.

period of the policy, no matter when the act occurred. In an occurrence policy the coverage is effective if the negligent or omitted act occurred during the period of the policy, whatever the date of discovery." *Zuckerman*, 100 *N.J.* at 310.

A further distinction between the two types of policies as stated in *Brander v. Nabors*, 443 *F.Supp.* 764, 767 (N.D.Miss.), aff'd 579 *F.*2d 888 (5 Cir.1978), was noted: "Basically, the 'claims made' policy would provide unlimited retroactive coverage and no prospective coverage at all, while the 'occurrence' policy would provide unlimited prospective coverage and no retroactive coverage at all." *Zuckerman*, 100 *N.J.* at 310. In other words, in an occurrence policy, the peril insured is the occurrence itself so that once the occurrence takes place, coverage attaches even though the claim is not made for sometime thereafter. In the claims made policy it is the making of the claim which is the event and the peril which is insured regardless of when the occurrence took place. *Id.* at 310–311, quoting S. Kroll, "The Professional Liability Policy 'Claims Made,'" 13 Forum 842, 843 (1978).

In *Sparks v. St. Paul Ins. Co., supra,* a professional liability policy in effect from November 1976 was cancelled on January 21, 1980 because of the insured's failure to pay the premium. *Id.* 100 N.J. at 327–328. Between June and August 1980 the insurance company was notified of a malpractice claim against the insured attorney for failing to answer interrogatories which resulted in a suppression of his client's answer and counterclaim in October 1979. *Id.* at 327. The St. Paul policy in the *Sparks* case contained this provision:

> This is a "claims made" Coverage Form. It only covers claims arising from the performance of professional services *subsequent to the retroactive date indicated* and then only to claims first made within the provisions of the Policy while this Coverage Form is in force. No coverage is afforded for claims first made after the termination of this insurance unless and to the extent that Reporting Endorsements are purchased in accordance with Condition 3 of this Coverage Form. Please review the Policy carefully. [*Id.* at 328].

The retroactive date set forth in the policy in *Sparks* was November 6, 1976, the same date as the effective date of

coverage, thereby providing no retroactive coverage during its first year. *Id.* at 328. The Court held that policies with such limited retroactive coverage are not strictly enforceable because the limited retroactive coverage was not in accordance with the "objectively reasonable expectation" of the insured. 100 *N.J.* at 340. Thus, despite the denomination as a "claims made" policy, the Court found that the policy was analogous to an "occurrence" policy and held that provisions of the policy that limited coverage to claims asserted only during the policy period were unenforceable. *Id.* at 341. The Court noted that if the St. Paul policy had contained adequate retroactive coverage, the Sparks would not have been afforded coverage. *Ibid.*, n. 5. In pointing out the substantial difference in St. Paul's policy in *Sparks* and the standard claims made policy in *Zuckerman,* the Court in *Sparks* noted:

> Indeed, St. Paul's policy combines the worst features of "occurrence" and "claims made" policies and the best of neither. It provides neither the prospective coverage typical of an "occurrence" policy, nor the "retroactive" coverage typical of a "claims made" policy. During the first year that the policy was in force, it provided no retroactive coverage for occurrences prior to the effective date of the policy. Thus, it afforded the insured only minimal protection against professional liability claims. *Only claims asserted during the policy year, based on negligence that occurred during the policy year, and that were subsequently communicated to the company during the policy year were under the umbrella of coverage.* [100 *N.J.* at 339; emphasis supplied].

In the present case the initial policy issued to defendants in 1977 and subsequent renewal certificates contained the identical provision as contained in the policy in *Sparks* which limited retroactive coverage to professional services performed subsequent to the effective date of coverage. Guarantee, therefore, maintains that the present policy must be treated as an occurrence policy which affords coverage for negligent acts occurring during the term of the policy even though the claim was reported subsequent to the cancellation date of the policy.

We reject Guarantee's argument. We note that the Court in *Sparks* reached its decision out of a "limited and special factual setting." 100 *N.J.* at 341–342. In its ultimate disposition, the *Sparks* Court noted that trial courts "should not be precluded from considering evidence tending to prove that the terms of

[the] policy [were] specifically understood and bargained for [by the insured]." *Id.* at 342 n. 6.

Here, Jay Newman, the managing partner of the law firm, testified at depositions which were read into the record that he investigated the difference between an occurrence policy and a claims made policy and specifically decided "it would be much better to remain on a claim[s] made basis just as we were before so that the very thing happening would have a zero chance of happening, that we would be caught between two carriers ..." Newman further testified, and the trial court so found, that the St. Paul policy "terminated at our request effective May 1, 1982 which was the time at which Guarantee coverage began."

Newman waited for a confirmatory letter from Guarantee that coverage was in effect as of May 1, 1982, before sending his letter of May 18, 1982 to the Couch Agency requesting cancellation of the St. Paul policy.

The public policy considerations in *Sparks* are not applicable here, where the insured specifically understood the terms of the "claims made" insurance policy and since the complaining party is the subsequent insurer and not the insured.

Affirmed.