263 N.J. Super. 278 (1993)
622 A.2d 930
VALJEAN HODGE, PLAINTIFF-APPELLANT,
v.
E. WYMAN GARRETT, M.D., DEFENDANT, AND PRINCETON INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1993.
Decided March 30, 1993.
*279 Before Judges GAULKIN, HAVEY and STERN.
Carol L. Forte argued the cause for appellant (Blume, Vazquez, Goldfaden, Berkowitz & Donnelly, attorneys; Ms. Forte on the brief).
George J. Kenny argued the cause for respondent Princeton Insurance Company (Connell, Foley & Geiser, attorneys; Mr. Kenny of counsel; Ernest W. Schoellkopff on the brief).
*280 The opinion of the court was delivered by STERN, J.A.D.
Plaintiff was injured during an abortion performed by Dr. E. Wyman Garrett on January 25, 1985, while defendant Princeton Insurance Company's (PIC) policy was in force. No claim was made until after the policy term ended and the policy was canceled for non-payment of premium. Plaintiff claims that, as a matter of law, the policy was an "occurrence" policy so that it covered the date of the operation. PIC contends that as the policy was a valid "claims made" policy there is no coverage. There is no contention that plaintiff cannot assert the coverage issue following default by the doctor.
The parties agree that if this were an "occurrence" policy, or must be treated as such, Dr. Garrett would be covered because the operation was performed during the period the policy was in force. On the other hand, if this is an enforceable "claims made" policy, there would be no coverage because the claim was not filed until after the termination. An "occurrence" policy covers all acts occurring within the policy period regardless of when the claim is filed, while a "claims made" policy provides coverage for negligent acts for which a claim is made and communicated to the carrier within the policy period regardless of when those acts occurred. Zuckerman v. National Union Fire Insurance Co., 100 N.J. 304, 310-11, 324, 495 A.2d 395 (1985). PIC's policy issued to Dr. Garrett provides that the act itself must also occur after the policy's effective date. However, under Sparks v. St. Paul Ins. Co., 100 N.J. 325, 495 A.2d 406 (1985), an enforceable "claims made" policy must provide retroactive coverage, or the insured must be provided with an opportunity to obtain same, so that his or her reasonable expectations are satisfied.
In prior litigation involving a different plaintiff but the same carrier and the same policy issued to Dr. Garrett, it was determined that there was coverage "[w]hether the policy is *281 construed as an `occurrence' or `claims made' policy."[1] We specifically noted that even though the act, involving a plaintiff who was injured during a similar operation, occurred during the policy period, the non-retroactivity provision was void or unenforceable because the court could not sustain a judgment "favorable to the drafter of the offensive document," quoting Sparks, supra, 100 N.J. at 341, n. 5, 495 A.2d 406. Further, we indicated that while Dr. Garrett was given the opportunity upon cancellation to purchase a "reporting endorsement," or "tail," so that his negligence during the policy period would still be subject to coverage for a claim made thereafter, his failure to do so did not render the limitation enforceable because similar conduct did not save the policy in Sparks. And significantly we stated there was no showing "that Garrett specifically understood or bargained for this type of coverage...."
Plaintiff insists that our decision in the prior case precludes litigation by PIC of the factual issues surrounding the purchase of the policy to show that "the terms of this policy were specifically understood and bargained for by [the insured] and that, although a policy with adequate retroactive coverage was available to him ... he specifically elected to purchase this policy with no retroactive coverage in the first year" and it was therefore enforceable as a "claims made" policy. Sparks, supra, 100 N.J. at 342, n. 6, 495 A.2d 406. Here, the trial judge found that Dr. Garrett was told of the distinctions between an "occurrence" and "claims made" policy and opted, essentially for economic reasons, to obtain the "claims made" policy without a retroactive provision and, although given the opportunity, never bought a "tail" after it was terminated or canceled. The judge thus found that the policy was enforceable and provided no coverage for the claim made.
*282 We need not decide the procedural question or accept the invitation to expand the preclusive effect of collateral estoppel principles. We so conclude because our review of the record reflects no evidence that Dr. Garrett was specifically advised of his right to purchase a "claims made" policy with a retroactive provision and that he knowingly elected not to do so. In the absence of such proofs, Sparks mandates coverage.
In Zuckerman, the Supreme Court held that a "claims made" policy limiting coverage to claims filed during the policy period is enforceable so long as the policy provides substantially unrestricted retroactive coverage. 100 N.J. at 321, 495 A.2d 395. However, in Sparks, decided the same day, the Court concluded that a "claims made" policy which "provided no retroactive coverage whatsoever during its first year" was not enforceable, 100 N.J. at 328, 495 A.2d 406, because it failed to provide coverage consistent with an insured's objectively reasonable expectations, and was thus violative of the State's public policy. Id. at 329, 495 A.2d 406. The Court held
that where there has been no proof of factual circumstances that would render such limited retroactive coverage both reasonable and expected, a "claims made" policy that affords no retroactive coverage whatsoever during its initial year of insurance does not accord with the objectively reasonable expectations of the purchasers of professional liability insurance.[2]
[100 N.J. at 340, 495 A.2d 406 (footnote omitted).]
In explaining the rationale behind its conclusion, the Court stated:
Although we held today in Zuckerman v. National Union Fire Ins. Co., supra, 100 N.J. 304 [495 A.2d 395] (1985), that a "claims made" policy that fulfills the reasonable expectations of the insured with respect to the scope of coverage is valid and enforceable, the policy at issue here is substantially different from the standard "claims made" policy. Indeed, St. Paul's policy combines the worst features of "occurrence" and "claims made" policies and *283 the best of neither. It provides neither the prospective coverage typical of an "occurrence" policy, nor the "retroactive" coverage typical of a "claims made" policy. During the first year that the policy was in force, it provided no retroactive coverage for occurrences prior to the effective date of the policy. Thus, it afforded the insured only minimal protection against professional liability claims. Only claims asserted during the policy year, based on negligence that occurred during the policy year, and that were subsequently communicated to the company during the policy year were under the umbrella of coverage.
[100 N.J. at 339, 495 A.2d 406.]
Justice Stein continued:
The realities of professional malpractice, however, suggest that it would be the rare instance in which an error occurred and was discovered with sufficient time to report it to the insurance company, all within a twelve-month period. The victims of professional malpractice are frequently unaware of any negligence until their injury becomes manifest long after the error or omission was committed.
Our review of the use of "claims made" policies in the professional liability field demonstrates that a policy that defines the scope of coverage so narrowly is incompatible with the objectively reasonable expectations of purchasers of professional liability coverage. We assume that there are vast numbers of professionals covered by "claims made" policies who are unaware of the basic distinction between their policies and the traditional "occurrence" policy. See Middle Dep't Inspection Agency v. Home Ins. Co., 154 N.J. Super. 49, 55-56 [380 A.2d 1165] (App.Div. 1977), certif. denied, 76 N.J. 234 [386 A.2d 858] (1978). However, those professionals covered by "claims made" policies who do understand how their policies differ from "occurrence" policies would expect that in return for the loss of prospective coverage provided by "occurrence" policies, they would be afforded reasonable retroactive coverage by their "claims made" policies. A leading proponent of "claims made" coverage has characterized this quid pro quo  the relinquishment of prospective coverage in return for retroactive coverage  as "the essential trade-off inherent in the concept of `claims-made' insurance." S. Kroll, supra, 13 Forum at 854 (emphasis added); see J. Parker, supra, 1983 Det.C.L.Rev. at 27 & n. 3.
[Sparks, supra, 100 N.J. at 339-40, 495 A.2d 406.]
Hence, "claims made" policies without retroactive coverage are unenforceable as such, and must be construed and enforced as "occurrence" policies. Id. at 341, 495 A.2d 406. In footnote six, however, the Court noted that "claims made" policies without retroactive coverage might be enforceable in limited circumstances:

*284 This court has not ruled previously that "claims made" policies without adequate retroactive coverage are contrary to the public policy of this state. In note 4, supra, we referred to the narrow circumstances in which such policies might be appropriate and valid. Accordingly, on remand the trial court should not be precluded from considering evidence tending to prove that the terms of this policy were specifically understood and bargained for by [the insured] and that, although a policy with adequate retroactive coverage was available to him from [the carrier], he specifically elected to purchase this policy with no retroactive coverage in the first year. Our holding is based on the record before us and on the assumption that, had any such evidence existed, it would have been offered in opposition to the motion for summary judgment.
If such evidence is offered, and the trial court concludes that the evidence is sufficient to prove that although insurance contracts are normally contracts of adhesion, good faith bargaining in this instance took place between the parties; that the terms of this policy were specifically bargained for and understood by [the insured]; and that the policy was purchased by him in preference to a policy with adequate retroactive coverage, the trial court would then be justified in enforcing the policy as written.
[100 N.J. at 342-43 n. 6, 495 A.2d 406.]
See also Guarantee Ins. Co. v. Saltman, 219 N.J. Super. 1, 6, 529 A.2d 995 (App.Div.) (law firm managing partner "investigated" what was best coverage and canceled another policy; subsequent carrier, not the insured, was the plaintiff seeking coverage under prior policy), certif. denied, 109 N.J. 484, 537 A.2d 1278 (1987).
The record reflects that when Dr. Garrett contacted the Britton Agency and requested information regarding medical malpractice insurance in early 1982, information was provided to him which described the alternative types of coverage available. In a letter of explanation, he was told that there were two "primary policies" available  "occurrence plus" and "claims made." Each was generally described. The letter further indicated that coverage was available through PIC. Dr. Garrett completed an application and returned it to the agency. Dr. Garrett selected "claims made coverage" for the period from "4/1/82 to 4/1/83." Although the application contained a blank next to the words "retroactive date," the blank was left empty. At the time Dr. Garrett applied for the policy, three and-a-half years before Sparks was decided, PIC did not offer retroactive "claims made" policies, at least without negotiation *285 or specific request of the insured.[3] Joseph Matt of the Britton Agency did not know if "anyone from Princeton Insurance Company met with Dr. Garrett to explain the different types of insurance coverage available."
By letter dated April 1, 1982, the Britton Agency informed Dr. Garrett that his "claims made" policy was effective as of April 1, 1982. The policy indicated coverage "from 4/01/82 to 4/01/83" with a "retroactive date" of "4/01/82" and provided:
This is a "claims made" Coverage Form. It only covers claims arising from the performance of professional services subsequent to the retroactive date indicated and then only to claims first made within the provisions of the Policy while this Coverage Form is in force. No coverage is afforded for claims first made after the termination of this insurance unless and to the extent that Reporting Endorsements are purchased in accordance with Condition 13 of this Coverage Form. Please review the policy carefully.
The policy issued was renewable annually by payment of premiums.
Commencing about two years after the policy took effect, there were several communications between Dr. Garrett and Matt about converting the "claims made" policy to an "occurrence" policy and the cost differential. However, Dr. Garrett never converted his "claims made" policy into an "occurrence plus" policy, and the Britton Agency followed normal procedure and mailed Dr. Garrett the "claims made" renewal policy annually. The doctor's "claims made" policy continued in full force until canceled for non-payment of premiums on July 28, 1986, effective July 1, 1986.
On August 12, 1986, Matt sent Garrett confirmation that his policy had been canceled, but advising, pursuant to the policy, that he could purchase a "reporting-form" or "tail" which would have "extend[ed] the period for reporting of claims or suits arising from treatment rendered since 4/1/82, the initial inception date of [the] policy." The letter advised Garrett that in order to purchase the "tail," "full payment of the reporting-form *286 premium must be received by September 12, 1986." However, the "reporting-form" premium was not returned, and the policy was permanently canceled. On September 12, 1986, Matt advised Dr. Garrett that he should "[p]lease recognize that this means that there is no coverage under this policy for any subsequent professional liability claim or suit initiated against you which results from treatment rendered during the period [from] 4/1/82 to 7/1/86." On October 22, 1986, a refund check in the amount of $26.11 was mailed to Dr. Garrett.
The evidence presented does not reflect that Dr. Garrett had any opportunity to buy a policy with retroactive protection, much less that he "specifically understood and bargained for" a "claims made" policy without retroactive protection or that he "elected to purchase [the] policy with no retroactive coverage in the first year." Sparks, supra, 100 N.J. at 342, 495 A.2d 406. The operation occurred in 1985 during the period of coverage, and, consistent with the "Reporting Endorsement" provision of the policy, Dr. Garrett was advised about the impact of not purchasing a "tail" to assure coverage for a claim, like this, subsequently made with respect to negligent conduct during the period of coverage. Nevertheless, these facts do not permit us to ignore the holding of Sparks where the policy offered the ability to purchase a "Reporting Endorsement," or similar "tail," to protect against subsequent claims for negligent conduct occurring during the policy period. See 100 N.J. at 328, 495 A.2d 406.
We hold that plaintiff is entitled to proceed against PIC as if Dr. Garrett was covered on an "occurrence" basis.
We reject the position that Sparks does not control because it established "new law" or is otherwise prospective. Sparks did not deal with previously established case law. Rather, it addressed significant "public policy" issues, and therefore, while the insurance policy here was issued before Sparks was decided, we have no hesitation in concluding that Sparks controls this litigation commenced thereafter. See *287 Rutherford Educ. Ass'n v. Rutherford Bd. of Educ., 99 N.J. 8, 21, 489 A.2d 1148 (1985). The Supreme Court in Sparks, unlike other cases, made no suggestion that its "public policy" decision was prospective only. Compare, Accountemps v. Birch Tree Group, 115 N.J. 614, 627-28, 560 A.2d 663 (1989).
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] See unreported opinion in O'Neal v. Garrett, A-3901-87T7 (August 25, 1989). See also R. 1:36-3.
[2] The Court nevertheless concluded that "claims made" policies without retroactive coverage "might be appropriate in certain contexts," such as where offered at a reduced premium during the first year of practice or when the professional is converting from an "occurrence" to a "claims made" policy. 100 N.J. at 340, n. 4, 495 A.2d 406. Here, Dr. Garrett had been in practice for many years without insurance.
[3] There was no proof that retroactive "claims made" policies were offered by PIC.