271 N.J. Super. 380 (1994)
638 A.2d 909
INSITE-PROPERTIES, INC., PLAINTIFF,
v.
JAY PHILLIPS, INC., DEFENDANT-THIRD PARTY PLAINTIFF/RESPONDENT,
v.
RIUNIONE ADRIATICA DISICURTA, THIRD PARTY DEFENDANT/APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 11, 1994.
Decided March 17, 1994.
*381 Before Judges BRODY, STERN and KEEFE.
Garrity, Graham, Hawkins & Favetta, attorneys for appellant (Francis X. Garrity and Walter J. Krako, of counsel; Leonard E. Seaman, III, on the brief and reply brief).
Barry J. Wendt, attorney for respondent (Mr. Wendt on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Third party defendant, Riunione Adriatica DiSicurta ("Adriatica"), appeals from the entry of summary judgment in favor of defendant Jay Phillips, Inc. ("JPI"), requiring the carrier to defend and indemnify defendant under a "claims made" professional liability policy. JPI was also awarded $4,456.95 in counsel fees and costs. The carrier asserts that, as JPI received the claim in 1991 and failed to notify the carrier during the policy period, *382 there was no coverage under the policy. Accordingly, it contends that its cross-motion for summary judgment should have been granted. We conclude that there is a factual dispute precluding summary judgment for either party.
JPI, a title abstractor, purchased three, twelve-month professional services liability insurance policies from Adriatica, effective December 6, 1989, 1990 and 1991. Section I of the policies read in pertinent part:
This is a Claims Made Policy. The Company will pay on behalf of the Insured all sums in excess of the Retention stated in the Declarations which the Insured shall become legally obligated to pay as Loss as a result of any Claim(s) first made against the Insured and reported to the Company during the Policy Period....
On September 19, 1990, JPI issued a Flood Hazard Certificate for property on which plaintiff built a house. The property turned out to be on a flood zone, and plaintiff was directed to elevate the structure at an estimated cost of $18,500. On July 14, 1991 Salvatore A. Mufalli wrote to JPI on behalf of plaintiff:
I am in receipt of a letter from the DEP and Borough of National Park which states that the flood certification for Block 47 Lots 9 & 10 is incorrect. A home has been constructed on this lot based on information supplied by the certification. I have been informed by the DEP that the elevation of the home is incorrect. Please contact me so that we may further discuss the matter.
The letter was sent by certified mail and Mufalli received an acknowledgement that it had been received and signed for by Jay Phillips, President of JPI, on July 17, 1991. In his certification, Phillips conceded "[a]pparently, I signed for [the 7/14/91 letter,] certified mail on 7/17/91 although I do not specifically recall doing so. Nevertheless, I acknowledge my signature on the certified mail receipt."
On August 30, 1991 plaintiff's attorney wrote to JPI at its post office box in Merchantville, the address contained on the Flood Hazard Certificate for the property:
This letter will serve to inform you that our office represents In-Site Properties, Inc. in reference to damages sustained as the result of your inaccurate flood certification for the above captioned property.
It is my understanding that Mr. Mufalli has discussed this matter with yourself, Continental Insurance Company, and others involved and it is apparent that the *383 building will have to be raised several feet in order to meet the requirements of the D.E.P. and other governmental agencies.
* * * * * * * *
I would appreciate it if you would forward my letter to your insurance carrier so that they may assign an adjuster and a claim number and contact me directly on your behalf....
In his certification, Phillips stated that "[s]everal months before this letter was mailed, I moved my company ... [and] my post office box in Merchantville became rarely used. I have no recollection as to receiving this letter ... until my company was served with the Summons and Complaint on January 10, 1992." In addition, an October 23, 1991 letter sent by plaintiff's attorney, certified mail, was returned marked "refused," but Phillips also certified that he did "not recall refusing" such a letter.
JPI was served with plaintiff's summons and complaint on January 10, 1992. The complaint alleged that JPI was negligent in "failing to properly inspect and issue a flood hazard certificate" and committed a "common law fraud." According to Phillips, he "immediately forwarded" the summons and complaint to his agent, and the carrier received them "through channels" by January 22, 1992. By letter dated February 10, 1992, the carrier's claim administrator denied coverage "predicated on the fact that your policy of insurance does not provide coverage for claims of which you had notice prior to the effective dates of your policy."
As a result of the carrier's position, JPI filed a third-party complaint against Adriatica for indemnification and seeking a declaratory judgment. In its answer the carrier asserted, among other things, that JPI's claims "are barred because of [JPI's] failure to give timely notice of the underlying claims against it," pursuant to the terms and conditions of the policy.
In its motion for summary judgment, JPI contended that it was covered because of "continuous, unbroken coverage" with the same carrier. On its cross-motion, Adriatica argued that there were "three separate policies" and that the "continuing coverage is totally irrelevant" to the reporting obligation under each policy. *384 Since the claim was made in the second policy period, but not reported until the third, Adriatica asserted that no coverage was provided "under either policy."
The motion judge found that the letter of July 14, 1991 did not constitute a claim; that JPI did not know there was a claim made during the second policy period covering December 6, 1990 to December 6, 1991, and that, in any event, "the reasonable expectation of the insured is that there is one policy which was renewed annually and which did not expire or terminate until December 6, 1992," after the notice was given. The judge therefore concluded that "there was notice of the claim and a reporting of the claim within the policy period...." Accordingly, he granted JPI's motion for summary judgment and denied Adriatica's cross-motion.
"[A] `claims made' policy provides coverage for negligent acts for which a claim is made and communicated to the carrier within the policy period regardless of when those acts occurred." Hodge v. Garrett, 263 N.J. Super. 278, 280, 622 A.2d 930 (App.Div. 1993), citing Zuckerman v. National Union Fire Ins. Co., 100 N.J. 304, 310-11, 324, 495 A.2d 395 (1985). See also Sparks v. St. Paul Ins. Co., 100 N.J. 325, 330, 495 A.2d 406 (1985) (claims made policy limits liability "to claims asserted during the policy period.")[1] Thus a policy like the one in this case which limits coverage to "Claim(s) first made against the Insured and reported to the Company during the Policy Period" (cf. Zuckerman, supra, 100 N.J. at 307, 495 A.2d 395) is enforceable. Hence, if JPI received a claim during the 1991 policy period, but gave no notice to the carrier until 1992, there would be no coverage.
Here, there is no dispute that three letters were mailed to JPI. While JPI's Phillips could not recall receiving any letter, and could not recall rejecting any certified document, he did not *385 dispute receipt of the July 14, 1991 certified letter from Mufalli. However, that letter did not constitute a "claim" within the meaning of the policy. Under the policy, "[t]he term `Claim' means a demand for money or money damages received by the Insured during the Policy Period and forwarded to the Company during the Policy Period...." On the other hand, the August 31, 1991 letter from plaintiff's counsel constituted a "claim," and although there may be a presumption that a letter actually mailed is actually received, see Cwiklinski v. Burton, 217 N.J. Super. 506, 509-511, 526 A.2d 271 (App.Div. 1987), there remains a factual dispute as to whether JPI received the "claim" embodied in that letter.[2] Accordingly, we remand for trial on that issue. If a claim was actually received, there would be no coverage because notice was not timely forwarded to the carrier. See Zuckerman where the denial of coverage was upheld because the insured neglected to notify the carrier of a complaint filed against him "three months before his policy expired" in 1981 until "ten months after the policy expiration date" in late 1982. Zuckerman, supra, 100 N.J. at 307, 495 A.2d 395.[3]
JPI nevertheless asserts that it had a "reasonable expectation" of coverage during the third policy period because it was an extension of a prior policy and extended that coverage into the period in which the claim was reported. Hence JPI contends that, notwithstanding the factual dispute relating to when the "claim" was first received, it was entitled to summary judgment. The trial *386 judge agreed, and concluded that there was coverage so long as the claim was reported during the third policy period. We disagree.
Had JPI given timely notice to the carrier, there undoubtedly would have been an upward rate adjustment based on the claim for the subsequent period. See Sparks, supra, 100 N.J. at 330-31, 495 A.2d 406; Zuckerman, supra, 100 N.J. at 311-13, 495 A.2d 395. As stated in Zuckerman:
the event that invokes coverage under a "claims made" policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy. Obviously, such an expansion in the coverage provided by "claims made" policies would significantly affect both the actuarial basis upon which premiums have been calculated and, consequently, the cost of "claims made" insurance. So material a modification in the terms of this form of insurance widely used to provide professional liability coverage both in this State and throughout the country would be inequitable and unjustified.
[Zuckerman, supra, 100 N.J. at 324, 495 A.2d 395.]
Hence, we reject JPI's argument that it was entitled to prevail because it had coverage on the date notice was actually given to the carrier. The policy required notice of the claim within the same policy period in which it was received. This is not a case where a claim was received at the very end of the policy period and notice was given to the carrier within a reasonable time thereafter, albeit after the policy period expired.
Accordingly, the judgment for JPI is reversed, and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] No issue is raised in this case with respect to the retroactivity or enforceability of the policy because JPI had coverage at all relevant times.
[2] We do not now address whether refusal of a certified letter, such as that sent by plaintiff's counsel on October 23, 1991, can constitute a "claim." Nor do we comment on whether refusal of certified mail may give rise to an inference of JPI's knowledge of the letter's contents, as that may impact on the question of prior receipt of a "claim" from the same individual.
[3] The carrier in Zuckerman provided an "unbroken series" of "claims made" policies from 1974 through February 1982, and it was "undisputed" that the "final policy" "terminated" before the notice was given. 100 N.J. at 306, 308, n. 1, 495 A.2d 395. Hence, we acknowledge that Zuckerman is distinguishable because the same carrier did not continue to provide coverage to the insured when notice was given.