278 N.J. Super. 513 (1995)
651 A.2d 1029
MEDICAL INTER INSURANCE EXCHANGE OF NEW JERSEY, A LICENSED INSURER OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HEALTH CARE INSURANCE EXCHANGE, A LICENSED INSURER OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1994.
Decided January 5, 1995.
*514 Before Judges SHEBELL, SKILLMAN and WALLACE.
George J. Kenny argued the cause for appellant (Connell, Foley & Geiser, attorneys; Mr. Kenny, of counsel; Ernest W. Schoellkopff and Mr. Kenny, on the brief).
Michael J. Schoppmann argued the cause for respondent (Kern, Augustine, Conroy & Schoppmann, attorneys; Steven I. Kern and Mr. Schoppmann, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal involves a dispute between two insurance companies regarding responsibility for the payment of a medical malpractice *515 judgment entered against Dr. Phillip Cohen, the Chairman of the Department of Orthopedic Surgery in St. Joseph's Hospital (St. Joseph's), located in Paterson.
Plaintiff Medical Inter Insurance Exchange of New Jersey (MIIX) provided medical malpractice coverage to Dr. Cohen. However, this policy contained an exclusion for any liability incurred by Dr. Cohen while acting as an executive officer of a hospital. Defendant Health Care Insurance Exchange (HCIE) provided liability coverage to St. Joseph's, which included coverage, as additional insureds, to members of the St. Joseph's Medical Staff "while performing administrative duties." HCIE acknowledges that Dr. Cohen qualified as an additional insured under this coverage.
The underlying medical malpractice action was filed by Lisa Bresemann, who claimed that she suffered permanent injury to her left knee as a result of medical malpractice committed by her orthopedic surgeon, Dr. Richard D. Jacobs. Her complaint named as defendants not only Dr. Jacobs but also Orthopedic Associates, a professional medical association of which both Dr. Jacobs and Dr. Cohen were members. Ms. Bresemann amended her complaint to include negligence claims against the members of the St. Joseph's nursing staff involved in her surgery and Stryker Corporation (Stryker), the manufacturer of a mini-camera used in the surgery. The complaint against Dr. Jacobs and the nursing staff was based on their use of an overheated saline solution, which allegedly resulted in Ms. Bresemann sustaining internal and exterior burns to her knee.
Ms. Bresemann subsequently filed a fourth amended complaint which added claims against Dr. Cohen. Although Dr. Cohen was not a member of the surgical team, Mr. Bresemann's fourth amended complaint alleged that he had committed malpractice in his capacity as Chief of Orthopedic Surgery at St. Joseph's, as a member of Orthopedic Associates, and as Dr. Jacobs' partner, by failing to provide proper supervision to nursing staff personnel *516 and/or by failing to provide proper directives or guidelines regarding the use of the heated saline solution.
Upon receiving service of process in April 1986, Dr. Cohen forwarded the complaint to MIIX, which provided him with a defense through the end of trial. Neither Dr. Cohen nor MIIX sent the fourth amended complaint to HCIE or communicated in any other way with HCIE regarding the Bresemann claim prior to submission of the case to the jury.
However, when the Bresemann jury asked the court for a clarification of Dr. Cohen's testimony as to whether he had authorized use of the heated saline solution for surgical procedures other than those he performed personally, the attorney retained by MIIX to defend Dr. Cohen sent a letter to HCIE, dated March 17, 1987, which asserted that HCIE would be responsible for any judgment entered against Dr. Cohen. Prior to HCIE responding to this letter, the jury returned a verdict in favor of Ms. Bresemann, apportioning liability as follows:

 Dr. Cohen: 30%
 Dr. Jacobs: 30%
 Nurse Villapaz: 25%
 [one of the nurses on the surgical team]
 Stryker Corp: 15%

The trial court subsequently entered a judgment on this verdict for an amount in excess of a million dollars.[1]
Thereafter, MIIX filed this action against HCIE seeking to recover the amount it paid in satisfaction of the judgment against Dr. Cohen as well as the costs of Dr. Cohen's defense and the attorneys' fees incurred in pursuing its claim against HCIE. One of HCIE's defenses was that the policy issued to St. Joseph's was a "claims made" policy, under which timely notice of a claim is *517 required to invoke coverage, and that neither Dr. Cohen nor MIIX had provided timely notice to HCIE. MIIX conceded that neither Dr. Cohen nor MIIX gave notice to HCIE of Ms. Bresemann's claim against Dr. Cohen prior to the trial of the case. However, MIIX contended that timely notice of Bresemann's claim against Dr. Cohen was provided through HCIE's receipt of a copy of the fourth amended complaint which added Dr. Cohen as a defendant. The purported source of this complaint was the attorney HCIE retained to represent the nurses on the surgical team, who also were afforded coverage under the HCIE policy.[2]
The trial court concluded that HCIE's receipt of the fourth amended complaint from the attorney it retained to represent the nurses on the surgical team constituted notice of the claim against Dr. Cohen. The court also concluded that the jury verdict in the underlying medical malpractice action established that the basis of Dr. Cohen's liability was negligence in the performance of his duties as an administrator at St. Joseph's and that HCIE was bound by that determination. Accordingly, the court entered summary judgment in favor of MIIX for $808,335.38, representing the amount it paid in satisfaction of the judgment against Dr. Cohen, prejudgment interest, attorneys' fees and costs.
We conclude that HCIE's receipt of the fourth amended complaint adding Dr. Cohen as a defendant in the Bresemann action did not constitute notice of a claim against Dr. Cohen within the terms of HCIE's policy, and that such notice was a precondition to coverage under the policy issued by HCIE. Therefore, we reverse *518 the judgment in favor of MIIX. Our conclusion that HCIE was not given timely notice of the claim against Dr. Cohen makes it unnecessary for us to consider HCIE's other arguments.
"Claims made" policies, which have become a popular means for insuring against professional malpractice, see Zuckerman v. National Union Fire Ins. Co., 100 N.J. 304, 310, 495 A.2d 395 (1985), differ from traditional "occurrence" policies primarily in the scope of the risk against which they insure:
In a [claims made] policy the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurance company during the period of the policy, no matter when the act occurred. In an occurrence policy the coverage is effective if the negligent or omitted act occurred during the period of the policy, whatever the date of [claim against the insured].
[Sparks v. St. Paul Ins. Co., 100 N.J. 325, 329, 495 A.2d 406 (1985) (quoting Samuel N. Zarpas, Inc. v. Morrow, 215 F. Supp. 887, 888 (D.N.J. 1963)).]
Thus, the basic difference between these types of policies is that a "`claims made' policy ... provide[s] unlimited retroactive coverage and no prospective coverage at all, while [an] `occurrence' policy ... provide[s] unlimited prospective coverage and no retroactive coverage at all." Zuckerman v. National Union Fire Ins. Co., supra, 100 N.J. at 310, 495 A.2d 395 (quoting Brander v. Nabors, 443 F. Supp. 764, 767 (N.D.Miss.), aff'd 579 F.2d 888 (5th Cir.1978)).
Since a claims made policy provides the insured with no coverage beyond the policy's final effective date, the insured must strictly comply with the policy's notice of claim provisions. As our Supreme Court has explained:
[T]he event that invokes coverage under a "claims made" policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy. Obviously, such an expansion in the coverage provided by "claims made" policies would significantly affect both the actuarial basis upon which premiums have been calculated and, consequently, the cost of "claims made" insurance.

*519 [Zuckerman v. National Union Fire Ins. Co., supra, 100 N.J. at 324, 495 A.2d 395.]
Although our courts have recognized that a party other than the insured may in some circumstances provide notice of a claim which will trigger coverage, see, e.g., Costanzo v. Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co., 30 N.J. 262, 272, 152 A.2d 589 (1959); Monguso v. Pietrucha, 87 N.J. Super. 492, 496-97, 210 A.2d 81 (App.Div. 1965); Miller v. Zurich Gen. Accident & Liab. Ins. Co., Ltd., 36 N.J. Super. 288, 293, 115 A.2d 597 (App.Div. 1955), the notice of claim provisions of a claims made policy are only satisfied by a notice which clearly informs the insurer of a covered claim. As the court noted in FDIC v. Barham, 995 F.2d 600, 604 n. 9 (5th Cir.1993), "[b]ecause notice of a claim or potential claim defines coverage under a claims-made policy, ... the notice provisions of such a policy should be strictly construed." Indeed, the Third Circuit has gone so far as to hold that "[b]ecause the notice of claim provision defines coverage under [a claims made] policy, ... the insureds must ... formally notify their insurer through its claims liability department that a claim may be asserted." American Casualty Co. of Reading v. Continisio, 17 F.3d 62, 68 (3d Cir.1994); see also LaForge v. American Casualty Co. of Reading, 37 F.3d 580, 583 (10th Cir.1994).
However, even assuming that a party other than the insured or a person acting on his behalf may give effective notice of a claim under a claims made policy, HCIE's receipt of the fourth amended complaint adding Dr. Cohen as a defendant in the Bresemann action did not give HCIE notice that a claim was being made against Dr. Cohen for which coverage was afforded under its policy. When HCIE received this amended complaint, it was already involved in the Bresemann action in providing representation to the nurses who were members of the surgical team. Consequently, it would have been natural for the attorney retained to represent the nurses to keep HCIE informed of the progress of the litigation. It also would have been natural for HCIE's claims personnel to assume that any pleadings transmitted by this attorney *520 were sent purely for informational purposes in connection with the defense of the nurses. Thus, HCIE's claims personnel had no obligation to review pleadings transmitted to them for such limited informational purposes in order to determine whether they included new claims that might trigger additional coverage obligations on the part of HCIE. Moreover, there is absolutely no evidence that HCIE's claims personnel in fact reviewed the fourth amended complaint and understood that it asserted a claim against Dr. Cohen for which HCIE provided coverage.[3] As a result, MIIX controlled the defense of the claim against Dr. Cohen through the end of the trial without HCIE's consent. Compare Jefferson Ins. Co. v. Health Care Ins. Exch., 247 N.J. Super. 241, 588 A.2d 1275 (App.Div. 1991).
MIIX places primary reliance upon SL Indus. v. American Motorists, 128 N.J. 188, 607 A.2d 1266 (1992) and Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 607 A.2d 1255 (1992), in arguing that HCIE's receipt of the fourth amended complaint constituted notice of a covered claim against Dr. Cohen. However, the basic issue in both of those cases was not the sufficiency of the alleged notice of a claim but rather the scope of the duty to defend once notice of a claim had been received. Moreover, SL Industries recognizes that "the insured being sued [has the responsibility] for promptly conveying ... the information that it believes will trigger coverage." 128 N.J. at 199-200, 607 A.2d 1266. If the insured fails to discharge this responsibility, the insurer cannot reasonably be expected to scrutinize documents transmitted by another party for unrelated purposes to determine whether they contain a claim against its insured.
Finally, we note that although an insurer that seeks to disclaim coverage based upon untimely notice from its insured *521 under an occurrence policy must demonstrate prejudice, Cooper v. Government Employees Ins. Co., 51 N.J. 86, 92-94, 237 A.2d 870 (1968), this requirement does not apply to a claims made policy because "the event that invokes coverage" under such a policy is "transmittal of notice of the claim to the insurance carrier." Zuckerman v. National Union Fire Ins. Co., supra, 100 N.J. at 324, 495 A.2d 395; accord DiLuglio v. New England Ins. Co., 959 F.2d 355, 358-59 (1st Cir.1992); Burns v. International Ins. Co., 929 F.2d 1422, 1425 (9th Cir.1991); cf. Molyneaux v. Molyneaux, 230 N.J. Super. 169, 175-77, 553 A.2d 49 (App.Div. 1989).
Accordingly, we reverse the judgment in favor of MIIX.
NOTES
[1] On appeal, we determined that the reduction of the damages awarded for pain and suffering to present value was error, but affirmed the judgment in all other respects. Bresemann v. Jacobs, Nos. A-4780-86T1, A-4988-86T1 (App.Div. 1989).
[2] HCIE admitted receipt of the fourth amended complaint in answers to interrogatories. Although HCIE subsequently attempted to withdraw those answers by filing certifications which asserted that HCIE had never received the fourth amended complaint, the trial court ruled that the motion was untimely and that HCIE was bound by its earlier answers. Since we conclude that HCIE's receipt of the fourth amended complaint from the attorney it retained to represent the nurses did not constitute effective notice to HCIE of the Bresemann claim against Dr. Cohen, we have no need to consider HCIE's argument that the trial court abused its discretion in refusing to allow HCIE to withdraw its answers to interrogatories.
[3] Indeed, as previously noted in footnote 2, HCIE presented certifications, which the trial court refused to consider, asserting that HCIE, contrary to the admission in its answers to interrogatories, did not actually receive a copy of the fourth amended complaint naming Dr. Cohen as a defendant.