NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4516-12T1

TEMPLO FUENTE DE VIDA CORP.
and FUENTE PROPERTIES, INC.,

      Plaintiffs-Appellants,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, P.A.,

      Defendant-Respondent.

_____

Argued: May 21, 2014 — Decided: June 6, 2014

Before Judges Fuentes, Fasciale and Haas.

On appeal from the Superior Court of New
Jersey, Law Division, Hudson County, Docket
No. L-2975-11.

Mitchell B. Seidman argued the cause for
appellants (Seidman & Pincus, LLC,
attorneys; Mr. Seidman and Andrew J. Pincus,
on the brief).

Andrew L. Indeck argued the cause for
respondent (Weber Gallagher Simpson
Stapleton Fires and Newby, LLP, attorneys;
Mr. Indeck, of counsel and on the brief;
Jessica V. Henry, on the brief).

PER CURIAM

    Plaintiffs Templo Fuente De Vida Corp. (Templo) and Fuente

Properties, Inc. (Fuente) (collectively plaintiffs) appeal from

the February 27, 2013 orders of the Law Division granting

defendant National Union Fire Insurance Company of Pittsburgh, P.A.'s motion for summary judgment and denying plaintiffs' motion for partial summary judgment. Plaintiffs also appeal from the court's May 15, 2013 order denying their motion for reconsideration. We affirm.

The facts underlying this appeal are not disputed. Templo is a New Jersey corporation that operates a church and child day care center. In early 2002, Templo decided to relocate and to construct a new church and day care center and, in June 2002, it entered into an agreement with Morris Mortgage, Inc. (MMI), under which MMI agreed to secure the loans Templo needed to purchase the land and complete the project. Templo created Fuente to acquire the property.

In September 2002, plaintiffs entered into a contract to purchase property in North Bergen for the project for $3,200,000. They made a $320,000 down payment. MMI did not promptly secure the necessary financing and, as a result, plaintiffs paid the seller an additional $130,000 to extend the mortgage commitment deadline. In February 2003, MMI alleged that it had obtained funding for the project through Merl Financial Group, Inc. (Merl), which agreed to provide a $15,900,000 loan to plaintiffs in return for a $159,000 commitment fee. Merl later increased the loan commitment to

$20,900,000 and plaintiffs paid Merl an additional $50,000 commitment fee. In September 2003, the loan commitment was again revised so that plaintiffs could obtain "early funding of the loan proceeds" in order to close on the property. Plaintiff's paid Merl $209,000 as an early commitment fee.

By this time, the seller of the property had issued a "time is of the essence" notice to plaintiffs, which obligated them to close on the property by October 8, 2003. However, Merl advised plaintiffs that it could not secure the necessary funds until November 24, 2003. Plaintiffs then paid the seller $100,000 to extend the closing deadline.

Without notifying plaintiffs, Merl assigned the loan to Heritage Capital Corporation (Heritage Capital), which then assigned it to Independent Capital Credit Corporation (Independent). Both of these entities were affiliated with Merl, although Merl told plaintiffs they were independent companies. Neither of these companies provided the promised loan funds to plaintiffs and, as a result, the seller refused to extend the closing date and plaintiffs were unable to complete the purchase. Plaintiffs asserted that they expended over $1,000,000 in attempting to purchase the property.

On November 24, 2003, Merl transferred its interests to First Independent Financial Group (First Independent) and Merl

continued its operations under First Independent's name. In late 2005, defendant issued an insurance policy to First Independent for a policy period that ran from January 1, 2006 until January 1, 2007. This policy provided First Independent with liability insurance for losses caused by the "wrongful acts" of its directors, officers, and employees, except to the extent that First Independent indemnified these individuals. The term "wrongful acts" was defined in the policy as "any breach of duty, neglect, error, misstatement, misleading statement, omission or act by any such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or [e]mployees" of First Independent.

To be eligible for coverage under the policy, the losses had to arise from a claim first made "during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy." The notice provisions of the policy stated that:

> (a) The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured <u>as soon as practicable and</u> either:
>
> (1) anytime <u>during the Policy Period</u> or during the Discovery Period (if applicable); or

(2) within [thirty] days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than [thirty] days after the date such Claim was first made against an Insured.

[(Emphasis added).]

On November 22, 2005, plaintiffs filed a complaint alleging breach of contract and tort claims in the Law Division against MMI, MMI's principal, Merl, Merl's affiliates, including Heritage Capital, and their principals. Plaintiffs never served this complaint. On December 2, 2005, plaintiffs filed an amended complaint adding two John Doe defendants.

Plaintiffs served the amended complaint, and the corporate entities and individuals allegedly covered by defendant's insurance policy with First Independent (the insureds) acknowledged receipt of it on February 21, 2006. However, they did not provide notice of the complaint to defendant until August 28, 2006.

Defendant thereafter sent the insureds three letters disclaiming coverage. The first letter, dated September 11, 2006, advised the insureds that plaintiffs' allegations were directed to Heritage Capital and its affiliates and principals, and that such claims were specifically excluded from coverage under the terms of the policy. The letter further stated:

> The purpose of this correspondence is to advise you that [the Policy] <u>does not provide coverage</u> for this claim. This coverage evaluation may be subject to amendment and/or supplementation because the applicability of certain exclusions, terms and conditions cannot be fully determined until the facts are more fully developed. [Defendant] reserves all rights, defenses and privileges under the Policy, at law or in equity, including the right to disclaim or otherwise amend or supplement our coverage analysis as forthcoming information dictates.
>
> . . . .
>
> Given our position as outlined above, we have not addressed certain other provisions of the Policy which may also limit and/or preclude coverage for this claim.

In a second disclaimer of coverage letter, issued on March 6, 2007, defendant advised the insureds that the exclusion noted in the September 2006 letter did not apply, but that there were other reasons for denying coverage. The letter specifically referred to the requirement that claims must be received within the policy period and that an insured must provide notice of the claim to defendant "as soon as practicable." The letter also stated:

> With regard to the notice requirements of the Policy, it appears that the claims in the Amended Complaint were reported to [defendant] on or about August 28, 2006 and, therefore, the claims were reported to [defendant] during the period of the Policy. More than this notice is required to

> establish coverage under this claims-made Policy, however. A covered claim also must have been "first made" against an insured during the period of the Policy . . . .
>
> No information has been provided to [defendant] which evinces when written notice of the Complaint and Amended Complaint first was received by any of the foregoing.

The letter concluded with the following reservation of rights:

> If you have any questions concerning this disclaimer of coverage, or if you have additional information which you would like to bring to the attention of [defendant] with regard to [its] coverage position, please do not hesitate to contact [defendant, whose] review of this information shall be without waiver of [defendant's] denial of coverage and will be made under a full reservation of [defendant's] right to alter or amend the within disclaimer of coverage.

Finally, on March 30, 2009, defendant sent the insureds a third letter disclaiming coverage as to three individuals allegedly associated with First Independent. This letter stated that the claims were not covered because plaintiffs' amended complaint did not set forth claims against these individuals in their role as officers of First Independent. However, defendant requested additional information concerning one of the officers.

On June 29, 2007, plaintiffs filed a second amended complaint, adding additional defendants and claims. For the first time, the complaint noted that Merl was a subsidiary and

affiliate of First Independent. On October 2, 2007, plaintiffs amended their complaint to specifically add First Independent as a defendant.[1]

On June 5, 2009, plaintiffs entered into a settlement agreement with the insureds. The parties agreed that the insureds were liable to plaintiffs for $3,613,220.52, which included the expenditures plaintiffs made to acquire the property; a sum for lost appreciation of the land; and $2,100,000 "representing the value of the child day care center [p]laintiffs lost as a result of the" insureds' actions. The insureds agreed to pay plaintiffs $102,750 of this liability and assign their claims against defendant for coverage to plaintiffs for the remaining amount due.

On June 2, 2011, plaintiffs filed a complaint against defendant seeking a declaratory judgment granting them coverage under the policy. On December 14, 2012, plaintiffs moved for partial summary judgment, and defendant filed its own motion for summary judgment on January 15, 2013. Following oral argument on February 8, 2013, Judge Patrick Arre issued a thorough written decision granting defendant's motion for summary judgment and denying plaintiffs' motion.

---

[1] Plaintiffs subsequently made additional amendments to its complaint, which are not relevant to the issues presented in this appeal.

The judge found that the insureds did not provide defendant with notice of plaintiffs' claim "as soon as practicable" and, therefore, coverage was barred under the specific terms of the policy. The policy period ran from January 1, 2006 until January 1, 2007. The insureds were served with plaintiffs' first amended complaint on February 21, 2006, but they did not provide defendant with notice of the claim until August 28, 2006, over six months after plaintiffs served them with the complaint. No explanation for this lengthy delay was provided.

The judge noted that, in Associated Metals & Minerals Corp. v. Dixon Chemical & Research, Inc., 82 N.J. Super. 281, 316-17 (App. Div. 1963), certif. denied, 42 N.J. 501 (1964), we held that a delay of five and one-half months in notifying an insurer was not "as soon as practicable" under the terms of a similar policy and, therefore, the insurer properly denied coverage. The judge stated:

> Applying Associated Metals to the facts of this case, the court has no choice but to find that the assigning insureds failed to provide written notice to [defendant] as soon as practicable, and therefore, were not entitled to coverage. In the present case[,] the assigning insureds waited more than six months from service of the First Amended Complaint before finally putting [defendant] on notice of the claims against them. Additionally, as in Associated Metals, [plaintiffs have] failed to produce any evidence for the record explaining or attempting to justify this delay; and none

of the assigning insureds, nor anyone from [their law firm] have been deposed. Thus, the undisputed facts before this court show that an unexplained six month delay exists between the time when the claims were first made (February 21, 2006) and when [defendant] was [first given] written notice of the claims (August 28, 2006). And just as the unexplained five and a half month delay in Associated Metals was unreasonable, so too is the six month delay present in this case. Therefore, this court finds as a matter of law [that] the assigning insureds did not provide written notice of the claims against them to [defendant] as soon as practicable, and therefore, are not entitled to coverage. Furthermore, because the assigning insureds are not entitled to coverage under the Policy, [plaintiffs] — as the assignee[s] — [have] no right to coverage either.

[(Footnote omitted).]

Judge Arre also rejected plaintiffs' argument that defendant had to show that it was prejudiced by the insureds' failure to notify them of the claim as soon as practicable before denying coverage. Relying upon the Supreme Court's decision in Zuckerman v. National Union Fire Insurance Co., 100 N.J. 304, 324 (1985), the judge held that no prejudice needed to be shown. On February 27, 2013, the judge issued orders granting defendant's summary judgment motion, and denying plaintiffs' motion.

Plaintiffs moved for reconsideration, asserting that the judge had not considered their argument that defendant should be

estopped from denying coverage because it did not specifically raise the insureds' failure to provide notice of the claim "as soon as practicable" in its three disclaimer letters.  Judge Arre denied the motion in a thoughtful oral opinion.  The judge found that defendant "responded to the assigning insured[s'] initial claim within three weeks and has continually denied coverage since that time.  [Defendant] has never at any time through its actions or inactions given [plaintiffs] reason to believe that coverage existed" and, therefore, estoppel could not be applied against defendant.  This appeal followed.

On appeal, plaintiffs renew the same arguments they unsuccessfully presented to Judge Arre.  They concede there are no disputed material facts and that, under our holding in Associated Metals, the insureds did not provide notice of plaintiffs' claim to defendant "as soon as practicable" under the policy.  Nevertheless, they again assert that defendant can not rely upon this provision to deny coverage unless it can show that it was prejudiced by the insureds' delay in providing notice, and that defendant should be estopped from denying coverage.

We are not persuaded by plaintiffs' arguments and affirm substantially for the reasons expressed by Judge Arre.  There was no dispute as to any of the material facts and, therefore,

this matter was clearly ripe for summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Moreover, plaintiffs concede that, while the insureds provided notice of plaintiffs' claim to defendant within the policy period, they did not do so "as soon as practicable" as required by the policy. The policy defendants provided to the insureds clearly required that notice be provided both within the policy period and as soon as practicable. "'[W]hen the language of an insurance policy is clear, [appellate courts] must enforce its terms as written.'" Thompson v. James, 400 N.J. Super. 286, 291 (App. Div. 2008) (second alteration in original) (quoting Conduit & Found. Corp. v. Hartford Cas. Ins. Co., 329 N.J. Super. 91, 99 (App. Div.), certif. denied, 165 N.J. 135 (2000)). Because the insureds did not meet both of the notice requirements that were unambiguously expressed in the policy, we conclude that coverage was properly denied to the insureds and, by extension, to plaintiffs as their assignees.

Like the trial judge, we reject plaintiffs' argument that defendant can only disclaim coverage if it can demonstrate that it was prejudiced by the insureds' failure to provide notice as soon as practicable. There are two different types of insurance policies: "claims made" and "occurrence" policies, and they differ based on how coverage is triggered. Under "claims made"

policies, coverage depends on when the insured notified the insurer of the claim. Med. Inter Ins. Exch. of N.J. v. Health Care Ins. Exch., 278 N.J. Super. 513, 518, 521 (App. Div.), certif. denied, 140 N.J. 329 (1995). Thus, the policy in this case, which made coverage dependent on the insureds providing defendant with notice of the claim within the policy period and as soon as practicable, was clearly a "claims made" policy.

Under "occurrence" policies, coverage depends on when the act or omission giving rise to the claim occurred. Id. at 518. For occurrence policies, when the insured does not provide timely notice, the insurer must establish prejudice in order to avoid coverage. Cooper v. Gov't Emps. Ins. Co., 51 N.J. 86, 94 (1968). However, that is not the case for claims made policies, like the one involved in this case. In Zuckerman, the Supreme Court distinguished between claims made policies and occurrence policies, holding that for claims made policies, an insurer need not show that it was prejudiced by an insured's failure to provide notice "as soon as practicable." Zuckerman, supra, 100 N.J. at 324. The Court stated that requiring an insurer to make such a showing would constitute "an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." Ibid.; see also Med.

Inter. Ins. Exch., supra, 278 N.J. Super. at 520-21 (citing Zuckerman and indicating that the appreciable prejudice requirement does not apply to claims made policies).

Plaintiffs ask us to distinguish Zuckerman or limit it so that it does not reach the claims made policy involved in this case. We decline this invitation because we discern no basis for distinguishing the Court's clear holding in Zuckerman from the facts in this case. Contrary to plaintiffs' contention, the Court did not limit its holding to cases where notice first occurred outside the policy period and it plainly stated that "[t]he Cooper doctrine" that requires prejudice to be shown for occurrence policies has "no application whatsoever to a 'claims made' policy . . . ." Zuckerman, supra, 100 N.J. at 324 (emphasis added). In a subsequent decision, the Court confirmed "the total inapplicability of the Cooper doctrine to a true 'claims made policy[.]" Sparks v. St. Paul Ins. Co., 100 N.J. 325, 342 (1985) (emphasis added). "[A]s an intermediate appellate court, we are bound to follow and enforce the decisions of the Supreme Court." Kaye v. Rosefielde, 432 N.J. Super. 421, 470-71 (App. Div. 2013). We do so here and therefore reject plaintiffs' contention that defendant had to show prejudice in order to invoke the notification requirements of this claims made policy.

Finally, plaintiffs showed no grounds for estopping defendant from denying coverage based on the insureds' failure to provide notice of the claim as soon as practicable after its receipt. In its disclaimer letters, defendant never conceded that the insureds met both of the notice requirements of the policy and gave no indication whatsoever that the claim would ever be granted. We therefore agree with Judge Arre's decision to reject this argument for the reasons expressed in his oral opinion denying plaintiffs' motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION